# Coates's Appeal.

When money is raised by sheriff's sale of land and brought into court for distribution, the court has an equitable jurisdiction to set off one judgment against another, independently of the statutes or Defalcation Act.

The right of subrogation rests on principles of pure equity, and will not be allowed to a party who is indebted to the judgment debtor against whom he asks to be substituted as plaintiff, without first satisfying such debt.

Judgment against principal and surety. The surety became insolvent, and his land was sold and the money brought into court, and the judgment paid out of it. The principal had a subsequent judgment against the surety; and moreover the surety had covenanted with the principal to pay off a judgment against land conveyed to him by the principal, which he had failed to perform, and the lien of the judgment had expired as against the surety. Other subsequent judgments existed against the surety. *Held* that these subsequent creditors were not entitled to set-off the amount paid out of the moneys in the first mentioned judgment against the claim of the principal on his judgment, but that the principal had a right to the amount of his judgment out of the moneys in court.

THIS was an appeal from a decree of the Common Pleas of *Chester* county on the distribution of moneys raised by sheriff's sale, in which it was agreed that the following statement of facts, upon which the question in the case arose and the decree of the Court of Common Pleas was made, be certified to this court:

On the 5th July 1835, Jesse Coates was the owner in fee-simple of several tracts of land in Chester county, on which there were some incumbrances by judgments and mortgages, much less in amount than the value of the lands. He was also seised in right of his wife of a tract of 7 acres and 39 perches lying on the Brandywine, in the same county. On that day a judgment was entered in the Common Pleas of said county in favour of Dorothy Vastine against Coates, on his bond and warrant of attorney, for $200, which judgment was subsequently marked to the use of Benjamin I. Miller. In April 1839, Coates and wife sold and conveyed to Pennock three several tracts of land, (two of them acquired in 1837, and the other of which was the 7 acres 39

perches above mentioned), for the sum of $6567.88. This consideration was made up for the most part of the amount of several judgments and mortgages then liens on the land of Coates, among which was the Vastine judgment. On the day of the delivery of the deed to Pennock, the following agreement, annexed to a list of liens against Coates, was entered into :

In consideration of Dr Jesse Coates and wife this day delivering to George W. Pennock a deed for the Caln rolling-mills and lands thereto belonging, as described in said deed, which bears date the 2d April 1839, the said George W. Pennock covenants and agrees to pay and discharge all the judgments and mortgages contained in the foregoing list within one month from the date hereof, except Goodwin Chalfant's judgment, and the mortgage and bond and judgment thereon, assigned to him by George Brinton, which the said Dr Jesse Coates covenants and agrees to pay in consideration of the premises and of the above balance of $91.59 having this day been paid him. If there should be any error in the calculation of interest aforesaid, the parties agree to correct it. Witness our hands and seals, the 20th day of April 1839.

GEORGE W. PENNOCK. [L. S.]
JESSE COATES. [L. S.]

Sealed and delivered, &c.

Among the liens in said list was the Vastine judgment. The mortgage referred to in said agreement was a lien upon other land of Coates and wife not conveyed to Pennock, and the judgment therein referred to was entered on the bond accompanying the mortgage, for the same debt, March 21st 1839. In April 1840 a judgment was entered in favour of Nathan Baker against Coates and Pennock, on their joint and several bond and warrant of attorney, for $300, in which Pennock was surety for Coates. On the 20th September 1841, Coates recovered judgment against Pennock on award of referees for $789.50, for a cause of action different from that contained in the above agreement. Under this judgment the real estate of Pennock, which he thus purchased of Coates and wife, was sold and the fund in court raised. The proceeds of sale were sufficient to pay Coates's judgment and all prior liens, including Baker's judgment, which was accordingly paid out of the proceeds.

The Vastine judgment was revived by *scire facias* against Coates within five years from its entry, in 1840, and remains a lien against his real estate ; but the holder of it neglected to revive it within five years against Pennock. The amount due thereon at the time of the sheriff's sale of Pennock's real estate was $226. 78. Execution had been issued upon it to November term 1841, and Coates paid $17.58 interest, and $11.41 costs thereon, January 5th 1842. There are other judgments against Pennock subsequent to Coates's, the first of which is held by Thomas Taylor, amount-

ing to more than sufficient to absorb the sum in controversy. At the time of the sheriff's sale, Pennock was and still is insolvent. The amount paid Baker on his judgment out of the proceeds of sale of Pennock's property was $343.43. The fund in court is $343.43, and is a part of the proceeds of said sale which reached and was applicable to the payment of Coates's judgment.

The court decreed that Coates was not entitled to it, but that it must be applied to the payment of subsequent liens against Pennock.

To this decree the following exceptions were filed in this court:

1. The court ought to have decreed the money in court to Jesse Coates.

2. They ought to have decreed $255.77, the amount of the Vastine judgment, to Coates.

*Darlington*, for the appellant, cited 8 *Wend*. 352; 9 *Watts* 266; 8 *Ib*. 157, 329; 2 *Ib*. 205; 1 *Ib*. 140; 4 *Ib*. 95; 10 *Serg. & Rawle* 137; 3 *P. R.* 381; 4 *Rawle* 98.

*Meredith*, contra, referred to 5 *Madd. R*. 459; 2 *Vern*. 428, 117; 4 *Watts & Serg*. 19; 1 *Vez*. 375.

The opinion of the Court was delivered by

KENNEDY, J.—In order to determine the matter in contest between the parties, little more seems to be necessary than to state their relative position to each other in regard to their mutual claims. Nathan Baker had a judgment against Coates and Pennock for $300, in which Pennock was the surety merely of Coates, which bound the real estate of Pennock. Coates had a judgment also against Pennock, of a subsequent date, which bound the same estate. On the 20th April 1839, Pennock, anterior to those judgments being obtained against him, acquired his real estate from Coates by purchase, subject to certain incumbrances, which he bound himself to Coates to pay off within one month from that date; among which incumbrances was a judgment in favour of Dorothy Vastine against Coates for $200, dated the 5th July 1835. This judgment, however, Pennock never paid, and the plaintiff in it suffered the lien of it on the real estate purchased by Pennock of Coates to expire, by her neglect to continue it as directed by the Acts of Assembly passed in this behalf. Other judgments, beside those of Baker and Coates, existed against Pennock, of a subsequent date, which also bound his real estate. Under this state of things Coates sued out an execution upon his judgment, by virtue whereof the real estate of Pennock was seized, condemned to sale, and sold afterwards under a writ of *venditioni exponas* by the sheriff, and the money arising therefrom brought by him into court, out of which the amount of the judgment in favour of Baker was paid. Upon this being done, Pennock and his subsequent

judgment creditors, claiming that he had thereby become the creditor of Coates to the amount paid out of the proceeds of the sale of his real estate in discharge of the Baker judgment, applied to the court below, into which the money was brought by the sheriff, to have the same amount deducted from the amount of the judgment which Coates had against him.   This application was opposed by Coates; but the court, conceiving that Pennock and his subsequent judgment creditors were entitled to have it done, accordingly decreed it to be so.   Coates, however, considering himself thereby aggrieved, appealed to this court for redress.

Having now stated the facts of the case, it is proper, in the first place, to observe that the application of Pennock and his subsequent judgment creditors to the court below could only be entertained and acted on in their favour upon equitable principles, for we have no statute authorizing it; and consequently, without a clear equity being shown on their part to have the deduction asked for allowed, they had no right thereto, and could not claim it.   That an application for a set-off under such circumstances does not come within the provisions of our Defalcation Act, is very clear, but must, as was said by Lord KENYON in *Mitchell* v. *Oldfield*, (4 *T. R.* 123), depend on the general jurisdiction of the court over the suitors in it, and was an equitable part of their jurisdiction which had been frequently exercised.   No doubt, as Lord MANSFIELD says, equity requires that cross demands should be made to compensate each other, by deducting the less sum from the greater, and the *difference* is the only sum which can be *justly* due.   *Green* v. *Farmer*, (4 *Burr.* 2220).   And courts of equity accordingly exercised jurisdiction for the purpose of effecting this end, in cases of cross demands, before any statutory provision was made authorizing the courts of common law to interpose their authority for a like purpose.   *Collins* v. *Collins*, (2 *Burr.* 820).   In *Ramsey's Appeal*, (2 *Watts* 230), Mr Chief Justice GIBSON, in delivering the opinion of the court, recognises the equitable jurisdiction of the courts of law to set-off cross judgments, by declaring that "judgments are set against each other, not by force of the statute, but by the inherent powers of the courts immemorially exercised, being almost the only *equitable* jurisdiction originally appertaining to them as courts of law.   An equitable right of setting off judgments, therefore, is permitted only where it will infringe on no other right of equal grade; consequently, it is not to affect an equitable assignee for value."   Strictly speaking, however, Pennock is not a judgment creditor here of Coates, as he has no judgment against Coates, unless by having paid the Baker judgment as the surety merely of Coates he can claim to be subrogated to the right of the plaintiff therein, and thus be put on the same footing of a judgment creditor of Coates, so as to have the amount paid on the Baker judgment set-off against an equal amount of the judgment in favour of Coates against him.

But the right of subrogation rests on principles of pure equity, and ought never to be granted to a party where it appears that he is indebted, on any account, in an equal, less or greater amount, to the person against whom the judgment exists to which he asks to be substituted as plaintiff, without first satisfying such indebtedness; but more especially ought it not to be granted where it appears, as in this case, that Pennock is indebted to Coates for not having paid the Vastine judgment, which he bound himself to Coates to pay as part of the consideration upon which he originally obtained the very estate from Coates, from which the money in question has been raised by the sheriff's sale. The effect of the decree of the court below, therefore, was not only to prevent Coates from receiving so much of the purchase money which Pennock had bound himself to pay for him for the estate, from the sale of which by the sheriff the money in court was raised, but to deprive him of so much of his judgment against Pennock, for which he had let Pennock have other property or money; thus making the loss to Coates, as Pennock is insolvent, twice as much at least as it ought to be, under any rational or equitable view that can possibly be taken of the case. It appearing, therefore, that Pennock is not entitled to be subrogated to the rights of Baker, the plaintiff in the judgment paid off, it is clear that he at most can only be considered as a simple contract creditor of Coates for so much money paid for him as was applied to the discharge of the Baker judgment, for which at law he has no remedy except that of bringing his action of assumpsit against Coates for money paid out to his use; but if he were to bring such action, it is perfectly clear that Coates, under our Defalcation Act, would defeat his recovery to the extent of the Vastine judgment, by defalcating the amount thereof, which Pennock obligated himself to Coates to pay, and ought to have paid long before he could be said to have paid the Baker judgment. Having now shown that Pennock has no right either in law or equity to have the set-off or deduction allowed, which was made by the decree of the court below, it is difficult, if not impossible, to conceive any rational ground upon which his subsequent judgment creditors can claim it; for the equity of Coates is at least equal, if not superior to theirs, and his legal right to or lien upon the fund in court being prior in point of time to theirs, must prevail and give him a preference.

Decree of the court below reversed, and the money in contest decreed to be paid to Coates, the appellant.