Trentman v. Eldridge *et al.*

Filed Dec. 11, 1884.

No. 11,350.

## TRENTMAN v. ELDRIDGE ET AL.

SPECIAL FINDING.—*Exceptions.*—*Record.*—*Practice.*—Where there is in the record a special finding of facts, with conclusions of law properly authenticated, stating therein that " both parties requested the court to find the facts specially and tø state his conclusions of law thereon," the case is shown to be within section 551, R. S. 1881, and exceptions to the conclusions of law will present all questions thereon.

SAME.—*Defective Record.*—*Trial.*—*Presumption.*—*Supreme Court.*—Where the record shows answers filed, which, however, do not appear, a trial and finding of facts, with conclusions of law and exceptions by both parties, the Supreme Court can not act upon the assumption that there was a trial without an issue.

MORTGAGE.— *Wife as Surety for Husband. –Marshalling Securities.—Priorities. —Estoppel.*—T. & Son, partners, had a mortgage on the lands of E., executed by E. and wife to secure a debt of E., and upon a decree of foreclosure thereof they bought the lands, and assigned the sheriff's certificate to a stranger, who, after receiving a sheriff's deed, conveyed the lands to T., one of the firm of T. & Son. There was a prior mortgage on the same lands by E. and wife to W., which included also lands known by T. & Son, when they took their mortgage, to belong to the wife, to secure a debt of E. to W. This mortgage was duly recorded when it was executed, but T. & Son had no actual notice of its existence. On foreclosure by W.

*Held,* that the wife was entitled to a decree requiring that her lands should not be sold until after the lands which were her husband's when the mortgage was given had been exhausted.

*Held,* also, that T. was not entitled as against the wife to a decree requiring that the lands of the wife be exhausted before resorting to the lands now held by him under his purchase.

*Held,* also, that the wife stood as a surety for her husband, with the right in equity to have the lands of the husband first exhausted, which right, by reason of its priority in time, was paramount to any right of T. to have the securities so marshalled as to protect him.

*Held,* also, that a covenant in the mortgage to T. & Son (executed in 1875) did not bind the wife personally, and did not estop her to assert her equity as above.

VENDOR AND PURCHASER.—*Rights of Former Owner who Buys from Bona Fide Purchaser.*—The rule that one who has notice of a prior equity may nevertheless secure a good title by purchasing from one who bought in good faith and without notice, does not apply to a purchase by a former owner who had notice of the equity.

From the DeKalb Circuit Court.

*J. I. Best* and *C. A. O. McClellan,* for appellant.

*W. H. Dills, J. E. Rose, E. D. Hartman* and *G. Plumb,* for appellees.

ELLIOTT, J.—Counsel for appellees are right in asserting that a finding, though in form a special one, is nothing more than a general finding unless the record shows that it was made at the request of some one of the parties to the action. *Cruzan* v. *Smith,* 41 Ind. 288 ; *Kyser* v. *Wells,* 60 Ind. 261 ; *Barkley* v. *Tapp,* 87 Ind. 25. But we think they make a wrong application of the rule. Where the judge who makes and signs the finding states in it that, a jury being waived, the defendants and the plaintiff " thereupon each request the court to find the facts specially and to state his conclusions of law thereon," a proper request is affirmatively shown, and that counsel err in attempting to apply the rule to such a case. Such a statement shows the request, and where there is a duly authenticated finding in the record, the reasonable presumption is that the request was a proper one, and that it was seasonably made.

We do not think it necessary that the record should affirmatively show that the party notified the court that he requested a special finding with a view to excepting to the conclusions of law. Where there is a request, a compliance, and a statement of exceptions duly exhibited by the record on appeal, there is enough to present the ruling of the trial court for review. We need not decide what the rule would be in a case where the record disclosed a refusal to find specially, but was silent as to the form of the request. Where there is a request followed by a finding of facts, a statement of conclusions of law, and of exceptions, the natural and reasonable inference is that the court made the finding because the request was such as the law requires. It would be unreasonable to presume, in the absence of countervailing facts, that the court gave heed to an improper request. Besides, to cast aside the finding on such a ground would be a sacrifice of substance to form.

The fact that answers, which the record shows were filed, do not appear in the record, does not authorize the conclusion that the defendants confessed the allegations of the complaint. We do not think such a conclusion would be a logical one in any case of that nature; certainly not in a case where the record also shows a trial, a request for a special finding by all the parties, and exceptions. The cases of *Bender* v. *State*, 26 Ind. 285, *Briggs* v. *Sneghan*, 45 Ind. 14, *Jelley* v. *Gaff*, 56 Ind. 331, do not give the slightest support to counsel's position.

If parties voluntarily go to trial without an answer to a complaint, or a reply to an answer, a waiver will be inferred, and a confession of the allegations contained in the pleading, not responded to, will not be presumed. 1 Works Pr., sections 693, 736, auth. *n*; *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510. In this case there were answers and replies to some, at least, of the adverse pleadings, and it can not be held, even under the application of more technical rules than prevail with us, that there was a trial without an issue. The

failure to answer or reply might, no doubt, have entitled the party who obtained the rule to demand a default. *Lilly* v. *Dunn*, 96 Ind. 220. But where the record shows a trial and a request for a special finding by all the parties, it would be a violation of the plainest rules of reason to hold that the pleadings of the adverse party were confessed by a mere failure to answer or reply.

No default was asked or ordered in this case, and it is not necessary to spend time in considering the arguments or authorities of counsel as to the effect of a default for failure to answer or reply.

We have disposed of the questions of practice presented by the appellee, so far as those that are even plausible are concerned, and now address our discussion to the substantial questions in the case, as presented by the special finding and conclusions of law.

The material facts contained in the finding may be thus stated: On the 26th day of November, 1873, Edward and Salinda Eldridge executed to John P. Widney the mortgage which this suit was brought to foreclose, conveying lots ten, fifty-nine, and parts of lots thirty-one and sixty-three in the town of Auburn. The mortgage was executed to secure the sole debt of Edward Eldridge as the mortgagee knew. The mortgage was recorded on the day it was executed. Salinda Eldridge was, at the time of the execution of the mortgage, and long had been, the wife of Edward. She was the owner in her own right of lots ten, fifty-nine and part of lot thirty-one, and her husband was the owner of the north one-third part of lot sixty-three. On the 12th day of September, 1875, Edward Eldridge was indebted to the firm of Trentman & Son, a partnership composed of the appellant and Maria Trentman, and, on that day, Trentman & Son proposed to extend the time of payment of the debt, if the debtor and his wife would execute a mortgage on lots ten, fifty-nine and parts of lots thirty-one and sixty-three. The husband Edward accepted the proposition, and a mortgage was drafted,

describing all of the real estate, but the wife refused to sign it, and directed the mortgagee's attorney and agent to strike out all that part of the description which covered her separate property. The attorney did strike out the description of lot fifty-nine, but, by mistake, omitted to strike out the description of lots ten and thirty-one. In September, 1876, Trentman & Son brought suit to foreclose their mortgage, and obtained a decree ordering the sale of the north one-third of lot sixty-three, but adjudging that the property of Salinda Eldridge was not subject to the mortgage, because, as the decree recites, "the mortgage was fraudulent and void" as to her property. Sale was made upon the decree, the judgment plaintiffs became the purchasers and assigned the sheriff's certificate to Henry C. Burghoff, who secured a deed, and subsequently conveyed the real estate described in the sheriff's deed to the appellant. At the time Trentman & Son took their mortgage they had no actual notice of the mortgage executed to the plaintiff in the present suit.

The only conclusions of law which affect the interests of the appellant are the second and third, which are as follows:

"2d. The defendant August Trentman is not entitled to have said lots number fifty-nine, ten, and south half of lot thirty-one, first sold as prayed for in his complaint.

"3d. That the defendant Salinda Eldridge is entitled to have said north one-third of lot sixty-three first offered for sale and exhausted before offering said other lots, or either of them."

The appellant invokes, in his behalf, the familiar equitable principle that where one creditor has a lien on one of two funds, and the other creditor has a lien on the same fund and also on another, equity will compel him to first exhaust the fund free from the lien of the creditor whose rights extend only to a single fund. *Applegate* v. *Mason,* 13 Ind. 75; *Hahn* v. *Behrman,* 73 Ind. 120. If the struggle were between the senior mortgagee and the appellant, there would, perhaps, be

no great difficulty, but the contest is not confined to these parties, for Mrs. Eldridge, who mortgaged her separate property to secure her husband's debt, has rights which accrued prior to those of the second mortgagees, and are entitled to high consideration. The claim of the appellant rests upon one parcel of property, and is founded upon a claim against the husband alone, and in such a case the equitable principle can not be used to overthrow the rights of a wife who has joined in executing a senior mortgage to secure her husband's debt. 1 Story Eq. Jur. 634; 3 Pomeroy Eq. 214.

Another familiar equitable doctrine is appealed to, namely, where a mortgage is executed upon several lots and some only are sold, the purchaser has a right to compel the mortgagee to first resort to the lots remaining unsold. This equitable principle, like that just referred to, applies only in cases where there are no intervening rights of third persons, and here there is the intervening equity of a wife who has mortgaged her property to secure the debt of her husband, and her equity is at least strong enough to defeat the operation of the equitable doctrine relied on.

In point of time Mrs. Eldridge is first, for her title was acquired and was announced by the record, long before Trentman acquired any interest in the real estate, so that unless he has the superior equity he can not succeed upon purely equitable principles, for, " Where there are equal equities, the first in time shall prevail." Neither of the principles invoked by appellant will give him success, for they do not apply where there is a prior equity entitled to protection; and the wife who pledges her own property for her husband's debt has a clear equity, which, when first in point of time, is sufficient to defeat the operation of the two equity rules relied on by counsel.

It is contended that Mrs. Eldridge has no right to ask that the property purchased by the appellant be first exhausted before resorting to her separate property embraced in the senior mortgage. This argument attaches to the mortgage

executed by Mrs. Eldridge and her husband to Trentman & Son a greater force than it really possesses. That instrument did not convey, nor profess to convey, anything more than her interest as the wife of the principal debtor; it did not purport to strip her of any of the rights or equities vested in her as the owner of some of the property embraced in the senior mortgage. A mortgage executed by a husband and wife, in 1875, upon the land of the husband, neither conveyed, nor assumed to convey, any other than the inchoate interest of the wife, and it did not estop her to assert rights vested in her by virtue of her separate ownership of other property. The effect of the mortgage did not extend beyond her interest in the specific property described in that instrument; and rights vested in her by virtue of some other character than that of wife were not impaired or affected by the mortgage executed by her in that character. While such a mortgage binds the *feme covert* as to the interest assumed to be conveyed, it does not bind her as to other and different interests. At common law a married woman was not estopped by the covenants in a deed, and surely is not estopped to assert a claim of title, accruing to her in a different capacity, in a case where she merely joins her husband in a mortgage upon his property to secure his separate debt. Bigelow Estop. (3d ed.) 277. Our own cases very strongly assert this doctrine. *Nicholson* v. *Caress*, 45 Ind. 479; *Wilhite* v. *Hamrick*, 92 Ind. 594, see p. 596; *Applegate* v. *Conner*, 93 Ind. 185; *Buchanan* v. *Hubbard*, 96 Ind. 1; *Davis* v. *Bartholomew*, 3 Ind. 485; *Aldridge* v. *Burlison*, 3 Blackf. 201. A forcible illustration of this principle is found in *Carithers* v. *Stuart*, 87 Ind. 424, where it was held that a married woman might buy and enforce a note by foreclosing the mortgage securing it, although she had joined her husband in executing the mortgage. It is said in a work of excellent standing, that, "A wife joining her husband in a deed of his land, but not making any covenants, is not estopped to claim title to the land under a mortgage held by her." 2 Jones Mort., section 1483.

As the wife's covenant in such a mortgage as that under which the appellant claims does not bind her, it is the same as though there were no covenants at all. In *Gillig* v. *Maass,* 28 N. Y. 191, it was held that a wife signing a mortgage with her husband, while having a previous mortgage, does not postpone hers, nor render hers subordinate. The author already quoted says: " But where a mortgagor became the husband of the mortgagee, and the two joined in a second mortgage of the premises to secure a prior debt of the husband, it was held that the wife's interest under the first mortgage was not thereby affected. She had not joined in the mortgage to assign her own mortgage, but to effectually pass the equity of redemption." 1 Jones Mort., section 138. All that can be said in this case is, that the effect of the wife's joining in the mortgage to Trentman & Son for her husband's debt, was to pass her contingent interest in the property described in the mortgage. Neither upon principle nor authority can it be held that the effect of such an act is to divest her of rights existing in her by virtue of her sole ownership of property embraced in a senior mortgage. Whatever those rights were they were not extinguished or surrendered by the second mortgage; for all that the latter instrument accomplished was to bar her from setting up any title in the property mortgaged which enured to her in virtue of her marital rights.

The mortgage in which Mrs. Eldridge joined, executed to secure her husband's debt to Trentman & Son, conveyed her inchoate interest, but vested in the mortgagees no right of action for anything more than a decree of foreclosure. It did not impose a personal liability upon her, nor did it extend to any other rights than such as she held as the wife of the principal debtor. The promise in the mortgage, executed in 1876, made it effective so far as a right to a foreclosure is concerned, but, as it was an executory contract, it created no personal liability against her. *Moffitt* v. *Roche,* 77 Ind. 48; *Pierce* v. *Osman,* 79 Ind. 259; *Lacey* v. *Willson,* 83 Ind. 570;

*White* v. *McNett*, 33 N. Y. 371 ; *Payne* v. *Burnham*, 62 N. Y. 69 ; *Manhattan, etc., Co.* v. *Thompson*, 58 N. Y. 80 ; 2 Jones Mort., section 1718. As the promise contained in the mortgage did not bind Mrs. Eldridge, and as her conveyance, by way of mortgage, operated only upon her interest in the character of wife of the principal debtor in the particular land described, she does not occupy the position of a debtor endeavoring to defeat the foreclosure of a mortgage executed to a creditor. For this reason, if for no other, the cases of *Rogers* v. *Meyers*, 68 Ill. 92, and *Coates's Appeal*, 7 Watts & Serg. 99, are not in point.

It is no doubt true that a mere equitable right is never enforced against a valid superior legal lien, created by a mortgagor. 2 Pomeroy Eq., section 716, *et seq.* The argument of appellant's counsel, based upon this proposition, contains the fallacy of undue assumption which pervades it throughout, and renders the whole argument unsound. It is assumed that the mortgage to Trentman & Son has the effect to cut off other rights than such as enured to Mrs. Eldridge, as the wife of the principal debtor whose debt the mortgage was executed to secure, and, as we have seen, this assumption can not be made good, for the utmost force that can be assigned the mortgage is that it takes from the wife all of her interest in the mortgaged premises, and bars her from setting up any claim acquired by her through her marital relations. The mortgagees did not acquire any other right or estate under that mortgage than that which it professed to convey, and that estate was such as the wife held in virtue of the marriage, and not such as she held through other sources, in her own right.

We do not regard the execution of the second mortgage as a waiver of any rights existing in Mrs. Eldridge except the right to assert a claim to the land by virtue of her marital relations. The facts specially found show that she refused to subject her separate property to liability, and required that the description of it be struck from the mortgage. It further appears that in the suit instituted by the Trentmans the mort-

gage was adjudged void, in so far as it professed to bind her separate property. These facts forbid the conclusion that she waived any rights held by her as the owner of·property not embraced in the second mortgage. The authorities cited by counsel do not apply to a case like this, where a *feme covert* executes a mortgage for no other purpose than that of relinquishing her inchoate interest and her equity of redemption. *Paulus* v. *Latta,* 93 Ind. 34, *vide* p. 38.

We think it plain that Mrs. Eldridge has done nothing that precludes her from asserting such equities as may arise out of her execution of the first mortgage on her separate property to secure her husband's debt. The question that now requires consideration is, which of the two parties has the superior equity?

The position of a wife who executes a mortgage on her own property to secure the husband's debt is that of a surety, and she is entitled to all the rights incident to that position. It is said in a recent work: "In all cases the wife, who joins her husband in a mortgage of her own property to secure his debts or the payment of money loaned to him, is merely the surety of her husband, and is entitled to all the rights and privileges of a surety." Schouler Husb. and Wife, section 177. Kelly Contracts of Married Women, 192; 1 Jones Mort., section 114.

Our own cases have fully recognized this general principle, and have somewhat extended it in some instances, by declaring that a wife who joins her husband in mortgaging his property has a right to an order directing that his interest be first offered for sale to satisfy the mortgage. *Moffitt* v. *Roche, supra; Medsker* v. *Parker,* 70 Ind. 509; *Leary* v. *Shaffer,* 79 Ind. 567; *Grave* v. *Bunch,* 83 Ind. 4; *Hardy* v. *Miller,* 89 Ind. 440; *Main* v. *Ginthert,* 92 Ind. 180. If the question were between the original parties, there would be no doubt as to the right of Mrs. Eldridge to compel a resort to her husband's property before offering hers for sale, and this equit-

able right will prevail against all equities not senior in time or superior in rank.

It is said by appellant's counsel that the rights of a surety can not be enforced in a case where they will injuriously affect the rights of third persons, but this is stating the rule too strongly, for in all cases where the rights of sureties prevail over those of third persons, there is some loss or harm to the latter, and yet that fact alone will not defeat the rights of the surety. If the assertion of the rights of the surety will, under the circumstances of the particular case, involve a violation of some rule of law or principle of equity, then, no doubt, the courts would deny the surety assistance. The question, therefore, which emerges at this stage of our investigation is, will it be inequitable to permit the rights of the surety to prevail against those of the appellant?

In examining the question stated, we again find it necessary to repeat that the execution of the Trentman mortgage simply operated as a conveyance of Mrs. Eldridge's inchoate interest in the land. We put our statement of the general doctrine here involved in Judge DILLON's language: "But," said that learned judge, in speaking of a similar question, "the holders of the note had no legal or equitable claim on the land of the wife not mortgaged." *Wolf* v. *VanMetre*, 23 Iowa, 397. What was true of the note in the case from which we have quoted, is true of the mortgage in this. As the mortgage under which Trentman claims title confined the right of the mortgagee solely to the property mortgaged, he can not, by virtue of his title derived from that instrument alone, assert any other rights than those conferred by it, so that the inquiry is, what rights did that instrument vest in the mortgagee as against the wife, who had become her husband's surety?

The legal right of the appellant is such as the mortgage on which his title is founded vests in him, and if he can claim more it must be upon the ground that his equity is superior to

that upon which Mrs. Eldridge relies to sustain her claims as surety.   His rights beyond such as the mortgage itself confers must rest upon some recognized principle of equity. Neither Mrs. Eldridge nor the appellant has a strict legal right supporting their respective claims, but each relies upon an equitable principle, so that the doctrine that where the equities are equal the law will prevail does not apply, and the authorities cited from White & Tudor's Leading Cases have no application here.   1 White & Tudor L. C., part 1, 285.

The Trentmans were chargeable with notice of the senior mortgage duly on record at the time they took their mortgage.   They were charged with notice of the rights of the parties as disclosed by the record, and were bound to know that the junior lien was subject to all the rights of the parties to the first mortgage.   They were, however, bound only in so far as the record supplied notice, and they had a right to act upon the belief that the second mortgage was affected only by such rights of the parties as the senior lien conferred.   The first mortgage showed that the debt for which the property was mortgaged was that of the husband, and, as the law is settled that where the wife unites with the husband in mortgaging her property to secure his debt, she stands as surety, the second mortgagees would be bound to take notice that the wife was surety, in case they had notice that it was the separate property of the wife which the senior mortgage pledged as security for the debt.   The second mortgagees were not bound by secret equities, and if they had no knowledge, or means of information equivalent to knowledge, that the relation of suretyship existed between Mrs. Eldridge and her husband, then their rights could not be impaired by the fact that such a relationship did exist.   It is a general rule that where there is no knowledge of the existence of the relation of principal and surety, the latter can not successfully claim any rights flowing from the relation if the claim will injuriously affect the rights of parties acting without knowledge.   *McCloskey* v. *Indianapolis, etc., Union,*

Trentman *v.* Eldridge *et al.*

67 Ind. 86; *Mullendore* v. *Wertz,* 75 Ind. 431 (39 Am. R. 155); *Arms* v. *Beitman,* 73 Ind. 85; *Tharp* v. *Parker,* 86 Ind. 102.

If the Trentmans, at the time they took their mortgage, had knowledge of the fact, or, what is the same, had means of knowledge of the fact, of the suretyship of Mrs. Eldridge, then they are chargeable with knowledge of the legal consequences resulting from that fact. *Anderson* v. *Hubble,* 93 Ind. 570 (47 Am. R. 394), *vide* authorities, p. 574. Where there is full knowledge of all the material facts, the party last in point of time is bound to take notice of all the legal rights which flow from the facts. If, then, the Trentmans had knowledge, either from the record, or by actual information, that the property which she joined her husband in pledging was her separate property, and the debt for which it was pledged was his, they were bound to know that she was a surety, with all the rights belonging to one occupying that position. The facts, although not quite as fully stated as might be desired, show that the Trentmans did have actual knowledge that she owned the property, and notice from the record that the debt was her husband's, for it appears that she demanded that so much of the description as covered her separate property should be struck from the mortgage, and it further appears that in the suit brought by the Trentmans to foreclose, and upon an issue duly joined, the court adjudged that the mortgage was, as to her lots, fraudulent and void.

Where a mortgage is adjudged void as to part of the mortgaged premises, that adjudication is conclusive as against all collateral attacks, upon the principle that what is litigated under the issues concludes the parties. *Fischli* v. *Fischli,* 1 Blackf. 360 (12 Am. Dec. 251); *Farrar* v. *Clark,* 97 Ind. 447; *Ragsdale* v. *Mitchell,* 97 Ind. 458. That the Trentman mortgage, in so far as it affected Mrs. Eldridge's title, was fraudulent and void, was settled by the decree in the suit brought by the Trentmans, and that decree operates upon all who found title upon the sale made under it.

It is contended that as Trentman sold to Burghoff, and

bought back from him, his purchase invests the former with the character of a *bona fide* purchaser and entitles him to protection against the equities of the surety of his debtor. It is true that the general rule is that if one having notice of an equity buys the title of one who purchased without notice, he will take a good title notwithstanding his previous notice of the outstanding equity. *Sharpe* v. *Davis*, 76 Ind. 17; *Evans* v. *Nealis*, 69 Ind. 148. To this general rule there is a notable exception, and that is this, a conveyance is not protected when made back to a former owner who had notice of the equity. Pomeroy says: " This exception is, that such a title can not be conveyed, free from the prior equities, back to a former owner who was charged with notice. If A. holding a title affected with notice, conveys to B., a *bona fide* purchaser, and afterwards takes a reconveyance to himself, all the equities revive and attach to the land in his hands, since the doctrine requires not only valuable consideration and absence of notice, but also good faith." 2 Pomeroy Eq. Jur., section 754.

The presumption is that the senior mortgagee took the mortgage upon the property as that of Mrs. Eldridge, recognizing the title as in her, for there is nothing in the record showing the contrary. In a case in some of its features very like the present, it was held: "And in the absence of any such facts, we are thrown back upon the legal presumption that (nothing appearing to give a contrary color of title) the taker of a conveyance is held to take it according to the true title of the grantors, and with the knowledge of it." *Smith* v. *Townsend*, 25 N. Y. 479. In the case of *Bank* v. *Burns*, 46 N. Y. 170, the court, in discussing a question such as we are dealing with, said: " The title of Mrs. Burns was upon record, and the plaintiff is chargeable with knowledge of it and the legal consequences resulting therefrom. One who takes a conveyance of real property from the rightful owner, must be regarded as taking it in subordination to the true title and with full knowledge of it, so far as it appears upon rec-

ord." When the Trentmans took their mortgage, the record of the former mortgage apprised them that it was executed to secure the debt of the husband, and that the wife owned the property, so that the record imparted knowledge of the facts, and as the mortgagees had record notice, as well as actual notice, of ownership, they were bound to know that the legal consequences were that the wife was a surety and clothed with all the rights and privileges of that position. As this notice was of record, Burghoff could not have held title superior to Mrs. Eldridge's equity, and certainly Trentman, one of the original mortgagees, can not.

Judgment affirmed.

Filed Dec. 11, 1884.