THOMAS TULLY *et al.*

*v.*

THE EXCELSIOR IRON WORKS.

*Filed at Ottawa January 25, 1886.*

1. RECOUPMENT—*for breach of warranty—in suit for the price of the thing sold.* In a suit by the seller of a machine for the contract price, the purchaser may recoup, under the general issue, any damages he may have sustained by reason of a breach of the warranty as to the quality and capability of the machine.

2. ACTION—*against whom it will lie—for work and materials—set-off.* If A agrees with B to manufacture a machine for him, and procures C to furnish the materials and do the work, the latter can not maintain an action against B for the value of the work and materials, but must sue A. But if he sues B, B can not set off or recoup any damages he may sustain in consequence of a breach of guaranty made by A.

3. PARTIES—*non-joinder of plaintiffs.* If the inventor of a machine undertakes, jointly with a manufacturer, to construct a machine for another, the manufacturer can not maintain an action in his own name alone, to recover the price of the purchaser. The non-joinder of the inventor as a co-plaintiff will be fatal.

4. INSTRUCTION—*must be based on evidence.* An instruction based upon the assumed existence of a fact of which there is no evidence, is objectionable, and is properly refused.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. H. T. & L. HELM, for the appellants.

Mr. A. A. EXLINE, for the appellee.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

The Excelsior Iron Works, the appellee, recovered a judgment in the Superior Court of Cook county, against the appellants, Thomas Tully and John D. Tully, for $944.04, which

was affirmed by the Appellate Court, and the case is certified, under the statute, to this court for review.

The recovery was had on account of certain machinery, consisting of shafts, pulleys, belting, etc., furnished by the plaintiff to the defendants, to be used by them in operating a machine known as "Cockell's Clay Crusher and Stone Extractor," which they had lately bought from Harvey Cockell, the inventor. It appears that the Tullys and Cockell were all by occupation manufacturers of brick, and that the latter had invented and was the patentee of the above mentioned machine, which is indifferently called by the witnesses "the crusher," "the pulverizer," etc. This invention of Cockell was used in the manufacture of brick to pulverize the dirt and extract the gravel or stone therefrom preparatory to putting it in the brick machines. A few days before the 28th of March, 1883, negotiations were commenced between Cockell and Thomas Tully for the purchase by the latter of one of Cockell's machines. It was wanted for one of Tully's yards in which he was running four brick machines, it being the intention to supply them all with one pulverizer. Upon talking the matter over it was found that the four brick machines would require to run them per day from one hundred and eighty to two hundred yards of pulverized dirt. Cockell told Tully that he feared his machine did not have capacity to furnish that amount of dirt, but expressed the opinion he could make one with the necessary capacity by enlarging the dimensions of the machine. The size of the machines which he had been putting up was three feet in diameter, and the cost $800. It was finally determined that Cockell was to put up one of his machines four feet in diameter, which it was supposed would cost $1000 or $1100. The Tullys were to have it at cost, whatever that might be. When the negotiations were fully concluded, in pursuance of the understanding between them Cockell delivered to the Tullys the following guaranty, which was prepared by Thomas Tully:

35—115 ILL.

"CHICAGO, ILL., *March 28, 1883.*

"*Mr. Thomas Tully:*

. "DEAR SIR—I hereby agree to make and erect one of my clay crushers and .stone extractors, which I hereby guarantee will crush clay and extract stone from clay sufficient to run your four brick machines, which is on your canal yard at present, and will have same in running order in twenty days from date.          HARVEY·COCKELL."

It further appears that Cockell was having his machines manufactured by the Excelsior Iron Works. At the instance of Cockell, Morand, the mechanical engineer and draughtsman of appellee, prepared plans and drawings for the machine, and it was put up in conformity therewith. The machine itself, when completed, had a pulley constructed on the top of it, and all that was necessary to operate it was to place a belt or band over it, connected with the shaft of the engine. This, of course, would have been a·very simple and inexpensive affair. When, however, the draughtsman came to draw the plans for connecting the machine with the motive power, it was found, upon consultation with Tully, a simple and direct connection could not be had without interfering with his system or plan of running the yard. To meet this difficulty, it was suggested it might be overcome by the construction and erection of a counter-shaft, with its necessary appendages. To this suggestion the draughtsman interposed, as he testifies, that Cockell, whom he was then representing, had nothing to do with the proposed counter-shafting and the additional machinery it would require. Tully, as is further testified, thereupon stated, in substance, that that would make no difference,—for the draughtsman to go ahead and get up the plans embracing the counter-shafting, etc.,—and gave an·order to the plaintiff, through Morand, to furnish the same, which was done, and the machinery was subsequently hauled away from the plaintiff's factory by Tully's team. The

amount of this order seems to have been $411.54. This amount, as we understand it, was the cost of connecting the machine proper with the power. When this was done the machine did not give satisfaction, and a number of slight changes in its internal arrangements were made, but still it failed to do good work. While these matters were in progress, as testified to by Morand, Tully concluded to have an elevator constructed in connection with the machine, for the purpose of lifting the dirt into his carts, and ordered the draughtsman to prepare plans for the same, which he did, and on being submitted to Tully they were pronounced satisfactory, and the material for the elevator was gotten up at the plaintiff's factory according to the plans, and was put up in the same manner by Tully's workmen, under the general supervision of the draughtsman. The cost of getting it up at the factory, exclusive of the labor of superintending the setting of it up, was $532.50. The present suit was brought to recover for the items covered by the two sums last above mentioned, which, in the aggregate, amount to $944.04, the exact sum for which judgment was recovered.

The declaration was in *assumpsit*, containing the common counts only, and was accompanied with an affidavit of amount due. The defendants filed the general issue, with an affidavit annexed, setting forth that they verily believed they had a meritorious defence to the plaintiff's claim, except $532.50, which, it will be observed, is the exact amount of the plaintiff's claim for the elevator, leaving the conclusion irresistible that the action is, in effect, confessed so far as the elevator is concerned. Indeed, the appellants could scarcely have done otherwise, for there is no pretence that the elevator constituted any part of the machine contracted to be put up by Cockell, nor of its connections; and we think there is just about as little foundation for the claim that the counter-shafting and its appendages, which were put up in furtherance of Tully's interest and convenience in operating his brick

yard, was any part of Cockell's undertaking, and so the jury and the courts below found.

The whole controversy, it will be perceived, relates to the $411.54,—amount of counter-shafting, etc. Whether this material was furnished by the plaintiff to the defendants upon their order, and was delivered to them in their own wagons, were facts which have been settled by the lower courts, and are not reviewable here. The only questions of law presented for determination arise upon the refusal of the court to give the following instructions:

"1. If the jury further believe, from the evidence in this case, that the defendants entered into a contract with Harvey Cockell, by which he was to furnish and erect for them one of his clay crushers and stone extractors, and that the plaintiff undertook and assumed to construct and erect the same for and on account of the said Cockell, then the jury are instructed that the said plaintiff can not, by bringing suit against the said defendants for the work and materials so furnished in the erection and construction of the said machine, escape the obligations and duties imposed by the guaranty and undertaking of the said Cockell, if he made any such guaranty.

"2. If the jury believe, from the evidence, that the plaintiff, either separately, or jointly with Cockell, undertook to furnish and erect the machinery in question for the defendants, under a guaranty that it should accomplish certain work, then the jury are instructed that the plaintiff can not recover from the defendants in this suit for any part of the work and machinery so furnished, unless the jury believe, from the evidence, that the plaintiff or the said Cockell has complied with the terms of the guaranty and undertaking aforesaid, unless the jury further believe, from the evidence, that the defendants have otherwise used and appropriated some part of the machinery or materials thus furnished by the plaintiff, and then the jury are instructed that the recovery of

the said plaintiff will be limited to the value of such parts as were thus appropriated and used, and the jury are instructed that against this the said defendants have the right to recoup, deduct and set off any sum which they may have expended in carrying out the undertaking and agreement of the said plaintiff or the said Cockell, and any loss, damage or expense which they may have incurred in attempting to carry out this undertaking, or by reason of the failure and defect in the working thereof while so undertaking to carry it out."

Neither of said instructions accurately states the law as applicable to the facts in the case, and hence they were both properly refused. With respect to the first instruction, it is to be borne in mind this suit is not brought by Cockell to recover the price of the machine. If it had been, the defendants would clearly have been entitled to recoup, under the general issue, whatever damages they may have sustained by reason of a breach of the warranty. If, as is assumed by the instruction, the action is brought in the name of the Excelsior Iron Works, for the work and materials furnished in the erection and construction of the machine, which would be simply an action in the name of the company for the value of the machine itself, it is very clear the breach of the guaranty by Cockell could not be set up by way of defence in such a suit, for Cockell is not a party to the suit, and his liability on the guaranty could not for that reason be determined in it. The controverted question of fact upon which the case turned was, whether the plaintiff had sold and delivered to the defendants certain specific articles sued for. If it had, then the defendants were liable for them, whether Cockell had performed his contract or not. On the other hand, if the articles sued for were materials furnished by the company to Cockell, then the action was brought against the wrong party, and the court should have instructed the jury to find for the defendants, as in case of nonsuit. It is as clear as anything can be, the defendants could not, by way of set off, recoup-

ment or otherwise, avail themselves in the present action of any claim or cause of action they might have had against Cockell, and hence an instruction relating to his liability under the guaranty was improper. The evident tendency of such an instruction was to mislead the jury, and it was therefore properly refused.

For the reasons already stated, the second instruction is also bad. It is not only obnoxious to the objections pointed out in the first, but it is objectionable in other respects. It tells the jury that if the machinery sued for was guaranteed by the plaintiff, either separately, or *jointly* with Cockell, to accomplish certain results, which it had failed to do, there could be no recovery for such machinery, except so far as it had been actually used, etc. Now, there is not a particle of evidence tending to show that the plaintiff separately guaranteed anything. The written guaranty offered in evidence shows upon its face that it was made by Cockell alone. Nor do we think there is any evidence tending to show there was a joint undertaking on the part of the plaintiff and Cockell, as contemplated by the instruction. If such were the case, it is clear the action as brought could not be maintained, on the ground Cockell was not made a co-plaintiff, and the plaintiff in such case should have been nonsuited at the trial for that reason. In other words, the case, upon the hypothesis stated in the instruction, should have been taken from the jury altogether.

In conclusion, we feel constrained to call attention to the imperfect manner in which the abstracts have been prepared. They do not fairly represent the case as shown in the record. By reason of this, much unnecessary labor has been imposed upon the court, and particularly the writer of this opinion.

The judgment will be affirmed.

*Judgment affirmed.*