JOHN R. GRAHAM *vs.* JOSEPH MIDDLEBY, JR., & others.

Norfolk. November 15, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Claiming jury, Exceptions. *Damages,* Recoupment. *Bond,* Damages. *Equity Jurisdiction.*

Where a party to an action at law who has filed a claim for a jury afterwards files a waiver of such claim and the adverse party objects to the waiver and asks for a jury, the question whether there shall be a trial by jury is to be determined by the presiding judge as a matter of discretion and such determination is not a subject for exception.

It is a general rule that a defendant cannot set up a claim in recoupment in reduction of damages unless he could have enforced such claim in an action against the plaintiff.

At a trial for the assessment of damages for the breach of a bond to secure the performance by a corporation of a contract, under which the plaintiff paid to the corporation $6,000 for a storage battery and the corporation agreed that, if an

injunction should issue restraining the plaintiff from using the battery, the plaintiff should have the right upon notice in writing to the corporation to withdraw from the contract and that the corporation thereupon would repay him the purchase money, the corporation was not a party to the bond nor to the action. It appeared that an injunction issued restraining the plaintiff from using the battery, and that two years thereafter the plaintiff gave to the corporation notice of his withdrawal from the contract and demanded the return of the $6,000 paid by him under the contract, which was not repaid. It also appeared that during the two years between the injunction and the notice in writing the plaintiff failed to care properly for the battery and that thereby it was rendered valueless. The defendant contended that, under R. L. c. 177, § 10, by which execution on a judgment for the penalty of a bond is to issue only for so much as is "due and payable in equity and good conscience," he was entitled to recoup from the sum payable to the plaintiff the amount of the damages sustained by the corporation by reason of the plaintiff's failure to use reasonable care to keep the battery in good condition. *Held,* that, in the absence of the corporation as a party, the defendant could not be allowed to enforce by way of recoupment a right of the corporation against the plaintiff which it might not be for the advantage of the corporation to enforce in this manner, and that the plaintiff was entitled to full damages undiminished by recoupment. *Whether* the defendant could maintain a suit in equity to compel the corporation to enforce for the defendant's protection any claim it might have against the plaintiff for delay in returning the battery and want of care of it, was referred to as a question on which no opinion was expressed.

CONTRACT, against five defendants, on a bond in the penal sum of $6,000 given by the defendants to the plaintiff to secure the performance by the Hatch Storage Battery Company of two agreements made by that company with the plaintiff. Writ dated August 15, 1901.

In the Superior Court the case first was tried before *Sherman,* J. The defendant Clare had been defaulted for non-appearance, and the case was defended by the other four defendants. The jury returned a verdict for the plaintiff in the penal sum of the bond with interest; and the four contesting defendants alleged exceptions, which were overruled by this court in a decision reported in 185 Mass. 349.

The four contesting defendants filed a motion that the amount for which execution should issue might be found by a jury. Later the four defendants filed a waiver of this claim for a jury, the defendant Clare was allowed to appear, and all five defendants then objected to having the amount for which execution should issue assessed by a jury and made a motion before *Hardy,* J., to have the case sent to an assessor. The plaintiff contended that he had a right to have the damages assessed by a jury, because a jury

previously had been claimed by some of the defendants, and filed a claim in writing for a jury trial on this ground. The judge ruled that the plaintiff was not entitled to an assessment by a jury and made an order that the case should be sent to an assessor. To such ruling and order the plaintiff alleged exceptions.

Thomas E. Grover, Esquire, was appointed assessor and filed a report.

The assessor found that on January 26, 1898, the plaintiff and the Hatch Storage Battery Company entered into a contract, by the terms of which the company was to set up in the car house of the Braintree Street Railway Company at South Braintree a storage battery for which the plaintiff was to pay $6,000. A first payment of $2,000 was to be made in cash upon the signing of the agreement and the balance of $4,000 was to be paid as required by the company for the manufacture of the battery. The contract also contained the following clause: "Provided, however, that if any temporary or permanent injunction shall be issued preventing said Graham or any person or corporation to whom he may transfer his rights under this agreement, or to whom he may transfer such storage battery, or preventing said Storage Battery Company from proceeding either with the manufacture or with the use of such battery, said Graham shall, unless such injunction is removed within sixty days, have the right upon giving written notice thereof to said Company to withdraw from this contract, and thereupon he shall be released from any further obligation whatever under the same, and said Company shall in such case repay to said Graham any sums which may have been paid to it by him at the date of such withdrawal."

On the same date the parties also entered into another contract, which provided that the company should furnish counsel, at its expense, to defend the plaintiff, or his transferee, in the event of proceedings being brought against either because of their use of the storage battery.

On the same day the five defendants, who all were directors of the Hatch Storage Battery Company, executed a bond to the plaintiff in the sum of $6,000, with the following condition: "The condition of this obligation is such that if the Hatch Storage Battery

Company shall in all respects perform and carry out its agreement with said Graham, contained in the contracts to which this bond is annexed, then this obligation shall be void; otherwise, it shall be and remain in full force and virtue." The Hatch Storage Battery Company was not a party to this bond.

The whole $6,000 was paid to the Hatch Storage Battery Company on or about May 31, 1898, which was before the acceptance of the battery. Before that time the plaintiff had assigned and transferred all his rights under the contracts to the Quincy and Boston Street Railway Company, and that street railway company repaid the $6,000 to the plaintiff. That street railway company began to use the battery on or about May 1, 1898, and continued such use until August 5, 1899, when it was restrained from further use of the battery by an injunction of the United States District Court for the District of Massachusetts, on the ground that the battery was an infringement of certain letters patent granted to one Charles F. Brush, dated March 2, 1886. This injunction was not dissolved within sixty days from its date, and had not been dissolved at the date of the filing of the assessor's report on August 18, 1910.

On August 5, 1901, two years from the day the injunction went into effect, the plaintiff, on behalf of himself and his assignee, the street railway company, gave due notice in writing to the Hatch Storage Battery Company of his own and his assignee's withdrawal from the contract, and demanded the return of the sums paid to the Hatch Storage Battery Company under the terms of the contract. The money was not repaid, and this action was brought on the bond.

The assessor found that the plaintiff, or his assignee the street railway company, failed to care properly for the battery after the injunction went into effect, and up to the time of the giving of the notice in August, 1901, and that the battery was thereby rendered valueless as a battery. He also found that the battery could have been preserved during the time between the injunction and the giving of the notice, either by taking the elements out of the electrolyte or by running a current regularly through the battery, and that the Hatch Storage Battery Company instructed the plaintiff as to the latter method but that the plaintiff failed to use either method.

The assessor further found that neither the plaintiff nor his assignee ever returned or offered to return the battery.

On all his findings of fact, the assessor ruled that the defendants could not recoup for more than the contract price of the battery, but that it was the duty of the plaintiff, or his assignee, to use reasonable efforts to preserve the battery, and that for the plaintiff's failure to do so, there being no evidence that the battery had any present value, the defendants were entitled to recoup the full amount of the contract price, so that the plaintiff could recover nothing.

The assessor also made a finding that, if he was in error in ruling that it was the duty of the plaintiff or his assignee to preserve the battery during the period of non-use, the plaintiff should recover $6,000 with interest from the date of the writ.

The plaintiff filed exceptions to the assessor's report, of which the first was as follows: "First: Because the assessor should have found and reported that the plaintiff should have execution in the cause against each and every the defendants, for the amount of the verdict heretofore rendered, together with interest thereon from the day of the date of the rendition thereof at the rate of six per centum per annum; and did not so find and report."

The defendants filed an exception to the exclusion by the assessor of evidence that the market value of the battery at the time of the sale was greater than $6,000 and to the ruling of the assessor that the defendants could not recoup for more than the contract price.

The case then was heard by *Pierce*, J., who made an order overruling all the exceptions to the assessor's report, confirming that report, and ordering that upon consideration of the evidence and the assessor's report execution should issue against the defendants in the sum of $1. The plaintiff appealed from the order. The defendants also appealed.

The case was submitted on briefs.

*P. R. Blackmer & J. B. Sullivan,* for the plaintiff.

*A. M. Lyman,* for all the defendants, except Clare.

SHELDON, J. The exception to the refusal of the judge to allow the plaintiff to file a claim for a trial by jury cannot be sustained. That question was to be determined by the judge as a matter of discretion and is not the subject of exceptions. *Bailey* v. *Joy,*

132 Mass. 356. *Vitrified Wheel & Emery Co.* v. *Edwards,* 135 Mass. 591. *Graham* v. *Lord,* 170 Mass. 1. *Stevens* v. *McDonald,* 173 Mass. 382. *Thompson* v. *King,* 173 Mass. 439, 443. *Gallagher* v. *Silberstein,* 182 Mass. 20. *Dolan* v. *Boott Cotton Mills,* 185 Mass. 576. *Clark* v. *Baker,* 192 Mass. 226.

The question which lies at the foundation of the case is whether the defendants have the right to recoup from the sum which they are held to pay to the plaintiff the amount of the damages sustained by the Hatch Storage Battery Company in consequence of the plaintiff's failure to use reasonable diligence to preserve in good order the battery which he had bought from that company.

The amount of such damages, even if they had been liquidated, could not have been set off by these defendants against the claim of the plaintiff in an ordinary action at law, although they were merely sureties for the company. That is settled by our decisions, and we need not consider whether the courts of some other States have not laid down a different rule. *Warren* v. *Wells,* 1 Met. 80. *St. Louis Perpetual Ins. Co.* v. *Homer,* 9 Met. 39. *Walker* v. *Leighton,* 11 Mass. 140. *Rawson* v. *Rawson,* 105 Mass. 214, 215. *Barnstable Savings Bank* v. *Snow,* 128 Mass. 512. *Brooks* v. *Stackpole,* 168 Mass. 537. *Simmons* v. *Shaw,* 172 Mass. 516. *McGuinness* v. *Kyle,* 208 Mass. 443.

But the defendants contend that the bond upon which they are held was by its terms tied to the contracts between the plaintiff and the Hatch Company; that the claim which they set up grew out of the plaintiff's obligation under those contracts, that is, his alleged obligation to take at least reasonable care of the battery so as to return it in proper condition if he elected to withdraw from his contract of purchase; that accordingly the claim against him grew out of the same transaction as his purchase of the battery and so could have been made a ground of recoupment by the company if the plaintiff had sued it directly for the return of the price paid by him, as he might have done; that as the bond given by the defendants, though a different instrument, constituted in reality a part of the transaction between the plaintiff and the Hatch Company, and as the defendants have the right to make available to themselves all the securities and all the means of payment held by the plaintiff against the Hatch Company, so they also have the right to be exonerated by the Hatch Company,

their principal, from their liability to the plaintiff and for that purpose to enforce, so far as necessary, all the rights of the Hatch Company against the plaintiff for their indemnity and in reduction of their liability, just as the Hatch Company might have done. And they point out that although this is an action at law and their liability upon the bond has been settled (*Graham* v. *Middleby,* 185 Mass. 349) upon principles of strict law, yet execution is to issue only for what is found to be " due and payable in equity and good conscience;" R. L. c. 177, § 10; and so they insist that the question now raised is to be settled by the rules of justice and equity. *Merrill* v. *McIntire,* 13 Gray, 157. *Austin* v. *Moore,* 7 Met. 116, 125. *Hatch* v. *Attleborough,* 97 Mass. 533, 538. *Leonard* v. *Whitney,* 109 Mass. 265. *Commonwealth* v. *Gould,* 118 Mass. 300, 307. *Quinn* v. *Brennan,* 148 Mass. 562. *Forbes* v. *Ware,* 172 Mass. 306.

There is force in the reasoning of the defendants. It was substantially applied and an equitable defense on similar grounds was sustained in *Bechervaise* v. *Lewis,* L. R. 7 C. P. 372. Some decisions made elsewhere tend more or less strongly to support it. *Downer* v. *Dana,* 17 Vt. 518. *Concord* v. *Pillsbury,* 33 N. H. 310. *Hollister* v. *Davis,* 54 Penn. St. 508. *M'Hardy* v. *Wadsworth,* 8 Mich. 349, 353. *Cole* v. *Justice,* 8 Ala. 793. *Waterman* v. *Clark,* 76 Ill. 428. *Meyer* v. *Stookey,* 3 Ill. App. 336. It may be, though that question will not be decided until it shall have arisen, that in a proper case, with proper parties before the court, where irremediable wrong otherwise would be done to a surety or to one under a merely indirect or secondary liability, we might be disposed to stretch the equitable doctrine even to the extent that here has been contended for. But the general rule unquestionably is that no one can set up a claim of recoupment by way of defense unless he could have enforced the alleged liability by a direct action thereon. *Sawyer* v. *Wiswell,* 9 Allen, 39, 42. *McCarthy* v. *Henderson,* 138 Mass. 310, 313. *Thayer* v. *Jewett,* 22 Maine, 19. *Kinne* v. *New Haven,* 32 Conn. 210. *Elliott* v. *Brady,* 192 N. Y. 221. *Kinzie* v. *Riely,* 100 Va. 709. *Tully* v. *Excelsior Iron Works,* 115 Ill. 544, 549, 550. *Gibbony* v. *Wayne,* 141 Ala. 300. *D. M. Osborne Co.* v. *Bryce,* 23 Fed. Rep. 171. The doctrine contended for is one of equity merely, and will be applied only so far as is necessary for the proper protection of a surety and only so far as

can be done without injury to the rights of others having equal or superior equities to those invoked in the special case. *Coffin* v. *McLean*, 80 N. Y. 560. *Orvis* v. *Newell*, 17 Conn. 97. *Coates's Appeal*, 7 W. & S. 99. *Eaton* v. *Hasty*, 6 Neb. 419. *Leggett* v. *Humphreys*, 21 How. 66. *Joyce* v. *Cockrill*, 92 Fed. Rep. 838, 845. It was so restricted in a State where the decisions have tended as strongly as any others to support the defendants' contention. *Graff* v. *Kahn*, 18 Ill. App. 485.

In this case, the battery in the hands of the plaintiff, even after he had exercised his option to withdraw from his contract of purchase, was in no sense a security or means of payment held by him 'to secure the payment for which the defendants have bound themselves. The contention of the defendants is that when he withdrew from the contract which alone gave to him or his assignee any right to hold the battery, it became his duty to surrender it to the company, at least upon demand. For a failure to do this, or for any failure to protect the battery from injury so far as it was his duty to do so, he was liable to the company. For a breach of his duty in either of these respects the company could hold him liable in a direct action against him; or, if it so elected, it may be that it could have used its claim against him as a basis of recoupment if he had sued it for the recovery of the money which he had paid to it. But it was for the company to elect which one of these courses it would adopt. *Gillespie* v. *Torrance*, 25 N. Y. 306. *Lasher* v. *Williamson*, 55 N. Y. 619. *Elliott* v. *Brady*, 192 N. Y. 221. *Baltimore & Ohio Railroad* v. *Bitner*, 15 W. Va. 455. If the company had chosen the latter course, its claim could have been availed of only to the extent of meeting the plaintiff's demand; *O'Connor* v. *Varney*, 10 Gray, 231; and the company hardly would have done so if (as in the case before us there was evidence tending to show) in order to get its goods upon the market it really had sold the battery to the plaintiff for a price much less than its value. In that event, and if the company deemed the claims set up by the defendants to be well founded, it doubtless would have preferred to submit to the demand of the plaintiff for reimbursement and seek to hold him for the whole value of the battery. But if the defendants can, without the concurrence of the company, by their own election made in an action to which the company is not a party, exercise

an option which the company has not as yet seen fit to exercise, perhaps has not yet been called upon to exercise, a great injustice may be done either to the plaintiff or to the company. If the company is not bound by what is done in this action, to which so far as appears it is a mere stranger, and if the defendants shall succeed in maintaining their claim to recoupment, the plaintiff will remain liable to the company for any breach of his obligation to it, and after having allowed to the defendants damages for that breach to the extent of his demand against them, may be compelled to pay to the company full damages for the same breach, perhaps to a greater amount than will have been allowed against him in this action. If, however, the company is bound by the election of the defendants and so cannot hereafter maintain its action against the plaintiff for the liability which it necessarily will have been found that he was under to it, then the company will, without its consent, by the action of its sureties and former directors in a suit of which it had no notice or knowledge, have been deprived of a vested right of action, perhaps (as some of the evidence indicates) of considerably greater value than the amount of the relief thus afforded to its sureties. Neither of these alternatives ought to be allowed.

Whether these defendants could by a suit in equity compel the company to enforce for their protection any claim it may have against the plaintiff by reason of its transactions with him, is not before us, and we express no opinion upon the question.

The plaintiff's exception to the refusal to allow him a trial by jury must be overruled. On the appeals from the order of the Superior Court upon the assessor's report, that order must be reversed; and an order should be entered upon the facts found by the assessor, sustaining the plaintiff's first exception to the assessor's report and overruling all the other exceptions thereto of each party as being either unfounded or immaterial, and ordering execution to issue in favor of the plaintiff against the defendants for the sum of $6,000 with interest from the date of the writ, not exceeding however the amount of the verdict with interest thereon.

*So ordered.*