## KNIGHT et al. v. DAVIS CARRIAGE CO.

(Circuit Court of Appeals, Fifth Circuit. January 14, 1896.)

BAILMENT—RIGHTS OF BAILEE—ACTIONS.

One S. was doing business as a dealer in carriages, and had in his hands, on consignment from plaintiff, a number of carriages. Hearing that S. had given a bill of sale of his stock to one B., plaintiff sent an agent to the town where S. did business, who, after investigation, finding that plaintiff's carriages were not included in the bill of sale, but were in the possession of B., made an arrangement with B. by which B. agreed to hold all plaintiff's goods, for plaintiff, against any and all other persons, and thereupon abandoned legal proceedings which he had been about to take to recover possession of the carriages for plaintiff. Shortly afterwards, plaintiff's carriages, among other property, were levied upon by the marshal, under a writ of attachment, issued at the suit of another creditor of S. B. then filed an affidavit and bond, under the local practice, as claimant of the attached property, including plaintiff's carriages, and the same was delivered to him by the marshal. Plaintiff subsequently sued the marshal for conversion of the carriages, and the marshal set up these facts. An officer of plaintiff, the same who had made the arrangement with B., testified, by deposition, to such arrangement, and the same was not disputed, except by a subsequent deposition of the same officer, given to meet an amendment of defendant's pleading, in which he testified that B. was not "authorized" to make the claim. *Held*, that as it was undisputed that B. was made bailee of plaintiff's carriages, to hold the same for plaintiff against all other persons, he had the right, for himself and plaintiff, to maintain any proper action for their protection, and to make the claim under the local practice, to protect his possession; and, such authority following as a matter of law from his possession as bailee, it was error to instruct the jury that, if they believed B. was not authorized by plaintiff to make the claim, they should find for the plaintiff, and to refuse to instruct them that as, upon the surrender of the carriages to B., he alone became responsible for them, they should find for the defendant, the marshal.

In Error to the Circuit Court of the United States for the Northern District of Texas.

This suit is for damages for alleged conversion of property. The action was commenced in the circuit court of the United States for the Northern district of Texas, at Dallas, by the Davis Carriage Company, a corporation under Ohio laws, as plaintiff, against George A. Knight, United States marshal of the Northern district of Texas, and his official bondsmen, all citizens of the state of Texas; and by a first amended original petition, filed February 14, 1893, the plaintiff alleged that on January 27, 1892, it was possessed of and owned 56 buggies and vehicles, of the value of $4,271.57; that the defendant Knight was then the qualified and acting marshal of the United States for the Northern district of Texas, and that, as such officer, he had executed a bond in terms of the law, with the other defendants, John Herrman, Benjamin N. Bryant, and W. K. Wheelock, as his sureties; that on the 27th day of January, 1892, said marshal had in his hands, in his official capacity, certain writs of attachment issued out of the circuit court of the United States for the Northern district of Texas, in certain cases wherein the Racine Wagon & Carriage Company and others were plaintiffs and J. B. Simpson was the defendant, which said writs commanded the said marshal to seize the property of the defendant J. B. Simpson sufficient to make the sums of money mentioned in said writs; that the said marshal, acting under and by virtue of the said writs, did unlawfully seize and take possession of the property of the plaintiff, viz. the 56 buggies and vehicles, an itemized list of which, with the value of each, the plaintiff attached as an exhibit to its pleading; that the said marshal thus converted to his own use

the said property, whereby his official bond was breached; and therefore the plaintiff prayed judgment against the said defendants, the marshal and his official bondsmen, for the value of said property.

The defendant Knight and his bondsmen answered by original answer, and afterwards by their first amended original answer, containing, after a general denial, the plea that, if the property alleged to have been converted by the plaintiff was converted, the same was done by the marshal by virtue of a certain attachment writ issued out of the circuit court of the United States for the Northern district of Texas, in the suit of the Racine Wagon & Carriage Company v. J. B. Simpson, by which writ the defendant marshal was commanded to make certain moneys, in said writ specified, by seizure of the defendant Simpson's property; that, before a levy by virtue of said writ upon the property in controversy was made, the marshal exacted from plaintiff, the Racine Wagon & Carriage Company, an indemnity bond to secure him against damages, and that said bond was given to him by the plaintiff in said writ, the Racine Wagon & Carriage Company, on which bond J. C. O'Connor, U. F. Short, and M. L. Crawford were sureties, the said bond being conditioned to protect and indemnify and save harmless the said marshal from all costs, damages, attorney's fees, and other liabilities that the said marshal might incur or become liable to pay by reason of executing the said writ of attachment, etc.; that the said marshal had been put to the cost of $250 attorney's fees in the defense of this suit; and he prayed that the Racine Wagon Company and the sureties on said indemnity bond be made parties defendant, and that, if any judgment should be recovered by the plaintiff against the said marshal and his official bondsmen, they have judgment over against the plaintiff in said writ and the sureties on its indemnity bond for the same amount, and for the further sum of $250, as attorney's fees. Further, the said defendants pleaded that if the property sued for was levied upon and seized by the defendant Knight, marshal, as aforesaid, under said writ of attachment, then the said defendants deny that said property was ever converted by said marshal to his own use or to the use and benefit of the Racine Wagon & Carriage Company, the plaintiff in said writ; but defendants averred that said property was included in the stock of goods of the James B. Simpson Carriage Company, and, together with such stock, the property was situated in a storehouse in the city of Dallas, in which J. B. Simpson, the defendant in said attachment writ, was doing business, and that said goods in controversy being in said stock, and the said marshal and the plaintiff in the writ being ignorant of plaintiff's alleged title to same, the goods were unintentionally included in the levy upon a stock of goods of James B. Simpson, and without any intention whatever of injuring the plaintiff or trespassing on its rights or depriving it of its property; that the said property in controversy was never sold under the levy, nor moved out of the house in which the levy was made, but that, almost immediately after the levy was made, one William Bering filed with said Knight (marshal) his affidavit and claimant's bond, as provided by law, for the trial of right of property, thus claiming the stock of goods from the said officer, including the property sued for by plaintiff, and that said stock of goods, including the goods sued for, were by said Knight (marshal) then immediately turned over and delivered to said Bering, by virtue of his claimant's affidavit and bond, as the said Knight was in duty bound to do, and said goods were by the said Bering received in the same place and in the same condition as when the levy was made; that said Knight has nothing in his hands representing the property except the claimant's bond, which is conditioned according to the requirements of the statutes of the state of Texas. The defendants further specially pleaded that at the time that Bering executed the said bond and affidavit for the trial of the right of property, and claimed the stock of goods, he was acting as the agent of the plaintiff, and was fully authorized and empowered by the plaintiff, the Davis Carriage Company, to thus hold and claim said goods and property for the plaintiff, and that said goods for which the plaintiff sued were in the manner aforesaid claimed by Bering for the Davis Carriage Company, and by and with its authority and consent; that the said goods were never converted by the defendant marshal, but that same were returned to the plaintiff by and through its said agent Bering,

in as good condition as when seized under said writ of attachment; that by reason of these facts, the marshal was not liable for the value of the goods to plaintiff; that plaintiff had suffered no damage by reason of the levy; that all of this property had been restored and received by it in the manner aforesaid after the levy was made. The two sureties on the indemnity bond, J. C. O'Connor and M. L. Crawford, filed their answer, and, after the general denial, adopted as their own the answer of their codefendants, and further pleaded that, if they were in any manner liable to plaintiff, it was by reason of their execution of the indemnity bond to the marshal; and they prayed that, in the event judgment was recovered against them, they have judgment over against the Racine Wagon & Carriage Company, principal in said indemnity bond, for a like amount. The Racine Wagon & Carriage Company and the other surety, U. F. Short, filed their amended answer; and, after certain demurrers to plaintiff's pleading, they pleaded the general denial, and a special answer, in substance the same as the special answer of the said Knight, marshal, and his official bondsmen, as above set out.

The plaintiff filed a replication, and, after certain demurrers to the pleading of the defendants, pleaded the general issue as to such answers, and specially replied that it was entitled to the possession of the goods on the 27th day of January, 1892, was the owner thereof, of which defendants had notice, and yet that these defendants willfully, maliciously, wrongfully, and without regard to the rights of plaintiff, wrongfully, and contrary to the expressed request of plaintiff, interfered with the goods of plaintiff, and exercised exclusive control and dominion over same, and illegally and wantonly seized and took possession of the property, and claimed the right to levy upon it and appropriate it to the satisfaction of the alleged debt of J. B. Simpson to the Racine Wagon & Carriage Company and others; that the plaintiff had informed the defendant marshal of its rights to the property immediately after the levy of the attachment upon it, and demanded possession, which was refused, and thereby it had been deprived of its property.

On the trial, among other evidence not material to the consideration of the case in this court, the following undisputed evidence was adduced, to wit:

Prior to the 12th of January, 1892, J. B. Simpson was doing business on the corner of Elm and Jefferson streets, in Dallas, Tex., under the trade name of the James B. Simpson Carriage Company, and that the business in which he was engaged was that of a wholesale and retail dealer in buggies, carriages, and agricultural implements, and that the stock of goods of which he was in charge was made up of goods belonging to him and goods which had been consigned to him by other manufacturers and dealers, and included the goods in question, which had been consigned to, but did not belong to, James B. Simpson, but did belong to the Davis Carriage Company. That on the 12th of January, 1892, J. B. Simpson entered into a contract with one W. M. Bering, as follows: "For value received, I have bargained, sold, and conveyed to W. M. Bering all my stock of buggies, vehicles, appurtenances, furniture, and office fixtures, etc., now located in my building, corner Jefferson and Elm streets, estimated at $27,000. It is intended to sell said Bering $30,000 worth of goods, etc.; and if, upon inventory taken, said goods, etc., do not amount to said $30,000, then J. B. Simpson is to deliver over customer's paper to supply the deficit. Witness my hand, this 12th day of January, A. D. 1892. James B. Simpson. Witnesses: John W. Traylor. John W. Wray. That the Davis Carriage Company's consigned goods were not delivered to said Bering. That on the 18th of January, 1892, Bering and others took forcible possession of the storehouse and all goods therein, and on the same day Simpson entered into a contract with Bering that he would assign to Bering all his existing contracts with manufacturers, which included the contract with Davis Carriage Company, provided the companies and concerns assented to said transfer, and assigned to said Bering all his rights, privileges, and contracts used, owned, and possessed by him with said companies, including the Davis Carriage Company, so far as he could, and that said contracts should pass to Bering subject to the approval of said companies and manufacturers, and also provided that no possession of said property of said companies or manufacturers (the Davis Carriage Company being numbered among them) should pass to Bering un-

til such assent was procured, and until accurate invoices thereof should be taken, when same should be delivered to Bering. That Simpson also leased the building to Bering, except the rear part of the lower floor, where most of the consigned goods, including the Davis Carriage Company's goods, were stored, and contracted to continue business or handle the consigned goods himself until Bering should obtain consent of the Davis Carriage Company and other consignors of goods to handle their goods. No invoice or inventory had been taken of the goods up to the time of the levy of the writ of attachment, on the 22d day of January, 1892.

Plaintiff introduced in evidence the first deposition of E. J. Burrows, who testified as follows: "My name is Edwin J. Burrows; age, 28; residence, Wyoming, Hamilton county, Ohio; place of business, Cincinnati, Ohio. I am secretary of the Davis Carriage Co., which is a corporation under the laws of the state of Ohio, and is the plaintiff in this case. I am acquainted with the subject-matter of this suit. The plaintiff in this action, the Davis Carriage Co., is a manufacturer of buggies and carriages, and had a number of buggies, carriages, road wagons, and other vehicles on consignment in the hands of J. B. Simpson, doing business as the J. B. Simpson Carriage Co., under consignment contract, by which the vehicles were to be sold by him, and accounted for to the Davis Carriage Co. when sold, or to be turned over to the Davis Carriage Co. at any time on their demand. A short time previous to the filing of this suit, the said Simpson sold or contracted to sell to W. M. Bering the goods belonging to him that were stored in the Weir Plow Co.'s building. At that time a considerable number of vehicles belonging to the Davis Carriage Company were also stored in this same building. On account of this sale or contract for sale, the Racine Wagon & Carriage Co. brought suit about the 27th day of January, 1892, against Mr. Simpson, in the United States court, and attached the goods belonging to them, and also a lot of the vehicles belonging to the Davis Carriage Co., on which Mr. Simpson had no claim, but which were stored in the same building with the Simpson goods, which he had sold or contracted to sell to Bering. The Davis Carriage Company now sues to recover their goods, or the value of same. Our company had a considerable amount of consigned goods in Dallas with Jas. B. Simpson. I received a telegram from J. W. McManus, in response to which I at once went to Dallas; and on the 25th of January, 1892, at about 9:30 a. m., I called upon Mr. Simpson, and made inquiry concerning my goods. Mr. Simpson stated that the consigned goods belonging to Davis Carriage Company were still in his possession, and that they were not included in the sale he made to W. M. Bering, and that he (Simpson) still had them stored in the rear part of the building in which a large part of the goods were stored, together with the Weir Plow Co.'s goods. I asked him for an order for the goods, which he gave me without hesitation. The original of this order is in the hands of our attorney, Mr. G. H. Plowman, and is as follows: 'W. M. Bering, Esq.—Sir: The Davis Carriage Co. have certain goods on consignment, which are subject to their order. You will permit them to examine, and take these goods, if they so desire; such goods as they may take being checked off, and receipt taken therefor. J. B. Simpson.' He further said he was ready to account for any consigned goods that he had sold out of the consigned stock theretofore. He said: 'Of course, I did not sell your goods to Mr. Bering.' He said he had a supplemental contract with Mr. Bering that the goods he (Simpson) held there belonging to other parties were not to be turned over to Bering, or the consignment contract transferred to him, without the consent of the owners of the goods, and that he had this contract at home. He showed me a copy, and called my attention to the bill of sale, and the fact that it conveyed only his goods, and no others. It did not include goods which Simpson held on consignment. I also saw the original bill of sale which Bering has. He showed it to me. It also specified the goods which Simpson owned. Simpson stated: 'A number of your buggies are on the north side of the Weir Plow Co.'s building, and that part of the building I did not rent to them. They have only the front part of the house.' He said an inventory was to be taken, which had at that time not yet been done, and, if he did not have of his own $30,000 in buggies, he was to make it up, and he did not sell any buggies be-

longing to anybody else apart.   *   *  '*   In company with Mr. Plowman, I went with said order from Mr. Simpson to Mr. Bering, and presented the order to him, and he said he did not desire to hold any goods except those he bought; that he did not want to surrender any of his rights, and he accepted said order, and agreed to hold all the Davis Carriage Co.'s goods for plaintiff in this case against any and all other persons, subject to whatever rights he himself might have in them. Bering said Simpson had told him at the time of his sale that a lot of Davis Carriage Co.'s consigned buggies, which the Davis Carriage Company was entitled to take on demand, were there. With this understanding and arrangement that he would hold them for us, I left the buggies in the charge of W. M. Bering, to hold for Davis Carriage Co., and did not sequester the goods or file the suit sequestering, which had been previously prepared by my attorney, Mr. Plowman, for he had already drawn up the papers necessary to sequester these vehicles. On the following day, I made a still further search and investigation for any other goods of Davis Carriage Co., and found three other jobs, which made 56 jobs which were left in the hands of Mr. Bering to hold for the Davis Carriage Co. Upon ascertaining the three additional buggies, I gave Mr. Simpson credit for them also, and have never sued him or claimed any of said 56 buggies of him since I had the settlement with him, on the morning of the 25th of January, 1892. I attach an itemized list of the 56 buggies belonging to the Davis Carriage Co., which were seized by the United States marshal for the Racine Wagon & Carriage Co. This list gives a description and the itemized value of said buggies; the value given being the wholesale value in Cincinnati. This itemized list is attached to my answer, and marked 'Exhibit A.' The value of each of these buggies in Dallas, making the total value of the buggies, with the freights added, in Dallas at that time [the time of the seizure by the United States marshal] amount to $4,-271.57. All these buggies when seized by the marshal were in possession of this plaintiff, Davis Carriage Co., through Mr. Bering. They were in the Weir Plow Co. building, and Mr. Bering was holding them for plaintiff. They were seized by the United States marshal under a writ of attachment issued out of the United States court. in favor of the Racine Wagon & Carriage Co., and the marshal took possession of them on January 27, 1892. A full and correct description and the market value of said buggies in Cincinnati at the time of the levy and seizure is attached hereto. The said sum of $3,991.57 is their market value in Cincinnati, with $5 per job for freight added, making in all $4,271.57, which is their market value in Dallas at that time.   *   *   *''   After taking the first deposition, the defendants pleaded that Bering had authority to give claimant's bond for Davis Carriage Company, and thereafter plaintiff took a second deposition of E. J. Burrows, on the 29th of January, 1894, in which he stated as follows: ''*   *   *   Mr. Bering had no authority from plaintiff to execute bond, affidavit, and claim for said stock of goods. nor to represent them in any manner whatever. He requested me to arrange with him to take possession of the Davis Carriage Co., and sell them on commission. We had some talk on this subject, but I refused to make any arrangement whatever with him, suggesting that in the future, if security was given, we would sell him goods; but he was in no way authorized by the Davis Carriage Co. or empowered to make bond, affidavit, or claim of any kind for the goods, nor did the Davis Carriage Co. consent in any way to his taking such action or making such claim.'' Defendants offered in evidence the indemnity bond executed by Racine Wagon & Carriage Company, with J. C. O'Connor, U. F. Short, and M. L. Crawford as sureties, dated 27th day of January, 1892, the date of the levy of the writ of attachment, whereby they indemnified said George A. Knight, and bound themselves to save him harmless from all costs, damages, and attorney's fees, etc., by reason of the execution and levy of the writ of attachment in favor of Racine Wagon & Carriage Company on the goods in controversy and other goods. Defendants introduced in evidence the claimant's bond of W. M. Bering, in which affidavit said Bering claims and makes oath, among other things, that he claimed the ownership, possession, and right of possession; that the claim is made in good faith; that said property is his, was his at the time of said levy, and he is now enti-

tled to possession thereof; that said bond is payable to Racine Wagon & Carriage Company in cause No. 1,465, Davis Carriage Company in cause No. 1,466, and M. Coppinger in cause No. 1,467, in the sum of $27,000, being double the value of the property, and conditioned that, in case said Bering fails to establish his right to said property, he will return same to G. A. Knight, said officer, or his successor, in as good condition as he received it, etc., and in case he fails to return said property and to pay for the use, etc., thereof, that he will pay plaintiffs the value of same, with legal interest thereon from the date thereof. George A. Knight testified: "In January, 1892, I was United States marshal for this district, and that this writ was placed in my hands for execution in favor of Racine Wagon and Carriage Co. against J. B. Simpson. I was instructed to levy on the stock of goods in the house on the corner of Jefferson and Elm streets, known as the J. B. Simpson Carriage Co. Mr. Bering was in possession of the property at that time. I was instructed to take everything in there except the Weir Plow Co. goods. I had possession of these goods six or eight days, and held them until the claimant's bond was made. I did not remove them from the building. Under the claimant's bond, I turned over to the party that claimed them. The goods in controversy here went to Mr. Bering. I never sold them or received any proceeds from them. I have not had possession of them since. The bond and affidavit shown me are the same under which the goods were turned over. After I turned the goods over to Mr. Bering I returned the bond and affidavit to the court."

The court charged the jury as follows: "Now, there is one feature about it. All the defendants, Knight and his bondsmen and the parties who gave the indemnity bond, they all come in and say that there was an arrangement made by the Davis Carriage Company, the plaintiff, with Bering, under which they clothed him with special authority to take care of those goods, and that that authority was full enough to enable him, as claimant, to put in a claim bond, and that the claim bond that he did give covering goods (other goods) and covering these goods inured to the benefit of this plaintiff, and that he had authority to do it. This is the only controverted point really in the case under the charge. On the other side, the plaintiff says that it gave him no such authority, and that they never had put the goods in his hands in such a way and under such circumstances as would clothe him with authority to include them in the claim bond he did give, and that the claim bond which he did actually give covering these goods with others was for himself. That is what plaintiff says,—that it was for himself, and intended to cover a claim that he preferred to these identical goods, and not for the plaintiff. If you believe, under the evidence, that Bering, when he gave that claim bond covering these goods, with others, was acting, so far as these goods were concerned, under due and sufficient authority from the plaintiff to include them to act for them as to these goods, and include their goods in that claim bond, and that such was his purpose in giving it to represent and take care of them for the plaintiff, then you will find for the defendants. If, on the other hand, you believe he did not have such authority; that the plaintiff never had clothed him with authority, nor Simpson ever did, nor any one else, that plaintiff never had clothed him with authority to act for them; that they did not intend, and he did not intend, that claimant's bond should include these goods for them; that he had no authority to do it,—then you will find for plaintiff for the goods in controversy, and assess their value at what you think they were worth in Dallas at the time of taking them, as a lot of goods, and not the retail price, with six per cent. interest from the time of seizure to the present time." Upon this point and issue in the case, the defendants requested the court to give the following charge, which was refused: "The jury are instructed: That after Burrows made his demand of the goods in controversy from Simpson, that Simpson gave him an order on Bering for the goods, which Burrows afterwards presented; and Bering, upon presentation to him of said order, agreed with said Burrows to keep said goods for the plaintiff, and to protect the same against every person, subject, however, to any claim which he (Bering) had upon the same on account of the contract which he had made with Simpson to purchase the stock of goods in which the buggies in con-

troversy were contained; and Burrows at the time was satisfied to allow the goods claimed by the plaintiff to remain in the possession of Bering with that agreement and understanding, and did allow the same to remain in his (Bering's) possession under said agreement; and that afterwards the same were levied upon by the defendant Geo. A. Knight, under a writ of attachment issued out of this court in favor of the Racine Wagon & Carriage Co., against Jas. B. Simpson; and after the levy of said writ the said Bering filed his affidavit and claimant's bond, claiming the goods in controversy with other goods, and said defendant Knight approved said bond, and delivered said goods to said Bering. That Bering had the right to claim said goods in the manner in which he did claim the same, and to recover the custody thereof, and, when he did so, alone was responsible to the plaintiff for said goods, or the value thereof, and the defendants herein are not liable for the same; and the jury will find their verdict for the defendants." At the instance and request of plaintiff, the court charged the jury as follows: "You are further charged that, if the property in question belonged to Davis Carriage Company, it matters not in whose hands said property was at the time of the seizure. It is a principle of law that, where one has the right to property, this draws the right of possession. And you are charged that if the goods were held without right by Bering, and that the marshal wrongfully levied upon them, and thereby converts them, then you are charged that Davis Carriage Company could maintain an action for damages against said marshal for conversion; and if you find that plaintiff had the right to this property, although it was in the hands of Bering, and if you find that the marshal levied upon said property as the property of J. B. Simpson, then you will find for plaintiff the value of said property, with six per cent. interest from the date of said levy."

Under the foregoing instructions, the trial resulted in a verdict for the plaintiff for the value of his goods in the sum of $5,132.95, against the defendant marshal and his official bondsmen, and in their favor against the Racine Wagon & Carriage Company and their sureties in the same sum, and for the further sum of $250, as attorney's fees in favor of the marshal. After vainly seeking to obtain a new trial, the defendant the Racine Wagon & Carriage Company sued out this writ of error, and in this court assigns as errors to be reviewed the instructions given by the court to the jury, and the refusal to give the instructions as requested.

J. M. McCormick and Wendell Spence, for plaintiff in error.

George H. Plowman, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The foregoing lengthy statement seems necessary in order to show the issues in the case, and the bearing of the instructions to the jury given and refused on the trial, which instructions are the basis of the errors assigned for review in this court.

On the trial before the court and the jury, the pivotal issue was whether W. M. Bering was so far the bailee or depositary of the attached goods that he could, for himself and the Davis Carriage Company, the bailor or depositor, maintain an action against the marshal levying the attachment to recover the goods or damages for their unlawful conversion. If he was such depositary, then we take it as clear that he had authority to file a claim bond under the statute, and recover the possession of which he had been deprived by the levy of the attachment, and his election so to do, carried into effect, concluded the Davis Carriage Company. It is substantially ad-

mitted that the 56 vehicles levied upon by the marshal at the suit of the Racine Wagon & Carriage Co. against J. B. Simpson were the property of the Davis Carriage Company, which property, at the time of the levy of the attachment, was in the exclusive possession of W. M. Bering. It ought not to be necessary to cite authority to show that at common law, under these circumstances, either the Davis Carriage Company or W. M. Bering could have successfully maintained against the marshal making the levy an action to recover the goods in specie or for the full value of the goods converted; and it seems clear that, as there was only one trespass and one conversion, the marshal could not be liable to both the owner and the depositary for the full value of the goods.

In Story, Bailm. § 94, after discussing in the previous sections, at length, the question of the depositary's rights as affected by his special property in the deposit, the learned author says:

"But whatever may be the true doctrine on this subject, whether that the depositary has a special property in the deposit, or not, there is no doubt that not only he, but the general owner, in virtue of his general ownership and right of possession, may also maintain a suit against a stranger, for an injury to it or conversion of it. Indeed, it is a general rule that either the bailor or the bailee may, in such a case, maintain a suit for redress; and a recovery of damages by either of them will be a full satisfaction, and may be pleaded in bar of any subsequent suit by the other."

Moak, Underh. Torts, p. 98, lays down this rule:

"Where the plaintiff is merely the possessory, but not the real, owner, he may, as against a third party, recover the entire value of the property; but, as against the real owner, only the value of his limited interest. Heydon and Smith's Case, 13 Coke, 68."

And see 1 Dane, Abr. art. 9, c. 17; Cooley, Torts, p. 516 et seq.

The statutory remedy resorted to by Bering to recover possession of the goods is a substitute for the common-law action of replevin, and resort to it should bring practically the same results between the parties; and as we have seen that Bering, as the naked custodian, and even custodian against the consent of the Davis Carriage Company, could have maintained replevin at common law concluding the Davis Carriage Company, why should it not follow that Bering's successful resort to the statutory remedy also concludes the Davis Carriage Company? But this case need not be decided on such narrow ground. The undisputable evidence in the case shows that, by agreement, the relation between the Davis Carriage Company and Bering was that of bailor and bailee, with the understanding that Bering was to hold the goods for the company, and against all other persons. The carriage company's secretary and only witness in regard thereto iterates and reiterates that when he (witness), in company with his attorney, and armed with sequestration papers, presented to Bering the order from Simpson for the delivery of the goods, he (Bering) accepted said order, and agreed "to hold all the Davis Carriage Company's goods after that against any and all other persons, subject to whatever rights he himself might have in them." and (witness) adds: "With this understanding and arrangement that he would hold them for us, I left the buggies in charge of W. M. Bering, to hold for the Davis Carriage Company,

and did not sequester the goods or file the suit sequestering which had been previously prepared by my attorney Mr. Plowman, for he had already drawn up the papers necessary to sequester these vehicles." It is true that after his first deposition, and when testifying to meet a special plea in the case, the same witness swears "that Mr. Bering had no authority from plaintiff to execute bond, affidavit, and claim for said stock of goods, nor to represent them in any manner whatever," which, as a special fact as to authority, may have been within the province of the witness to swear to, but, as a conclusion of law arising on the facts of the case, it was exactly the question which was before the court and jury. As the undisputed evidence in the case shows that Bering was the bailee by agreement of the carriage company, it seems clear that Bering, as such bailee, had the right for himself and his bailor to maintain any proper action for the protection and preservation of the property, and, a fortiori, to make the claim bond under the statute in order to restore and protect his possession. Indeed, it seems to us too clear for argument that such a claim, under the understanding between Bering and the Davis Carriage Company, was absolutely necessary for Bering to carry out his agreement to hold the goods for the Davis Carriage Company against any and all other persons.

On the trial, the judge instructed the jury, over the objections of the plaintiff in error, as follows:

"If you believe, under the evidence, that Bering, when he gave that claim bond covering these goods, with others, was acting, so far as these goods were concerned, under due and sufficient authority from the plaintiff to include them to act for them as to these goods, and include their goods in that claim bond, and that such was his purpose in giving it, to represent and take care of them for the plaintiff, then you will find for the defendants. If, on the other hand, you believe he did not have such authority; that the plaintiff never had clothed him with authority, nor Simpson ever did, nor any one else; that plaintiff never had clothed him with authority to act for them; that they did not intend, and he did not intend, that claimant's bond should include these goods for them; that he had no authority to do it,—then you will find for plaintiff for the goods in controversy, and assess their value at what you think they were worth in Dallas at the time of taking them, as a lot of goods, and not the retail price, with six per cent. interest from the time of seizure to the present time."

In the view we take of the case, this instruction was erroneous and misleading, in that the court submitted to the jury a question of mixed law and fact, as a pure question of fact, and without giving the law applicable thereto, and for the further reason that it practically instructed the jury that a special authority emanating from the Davis Carriage Company to W. M. Bering to make the claim and furnish bond was requisite, in order that the release of the goods under claimant's bond should be conclusive as to the carriage company.

At the same time, the plaintiff in error requested the court to charge the jury as follows:

"The jury are instructed: That after Burrows made his demand of the goods in controversy from Simpson, that Simpson gave him an order on Bering for the goods, which Burrows afterwards presented; and Bering, upon the presentation to him of said order, agreed with said Burrows to keep said goods for the plaintiff, and to protect the same against every person,

subject, however, to any claim which he (Bering) had upon the same on account of the contract which he had made with Simpson to purchase the stock of goods in which the buggies in controversy were contained; and Burrows at the time was satisfied to allow the goods claimed by the plaintiff to remain in the possession of Bering with that agreement and understanding, and did allow the same to remain in his (Bering's) possession under said agreement; and that afterwards the same were levied upon by the defendant Geo. A. Knight, under a writ of attachment issued out of this court in favor of the Racine Wagon & Carriage Co., against Jas. B. Simpson; and after the levy of said writ the said Bering filed his affidavit and claimant's bond, claiming the goods in controversy with other goods, and said defendant Knight approved said bond, and delivered said goods to said Bering. That Bering had the right to claim said goods in the manner in which he did claim the same, and to recover the custody thereof, and, when he did so, alone was responsible to the plaintiff for said goods, or the value thereof, and the defendants herein are not liable for the same; and the jury will find their verdict for the defendants."

This instruction the court refused, and the plaintiff in error duly excepted, and in this court such refusal is assigned as error. The charge requested is substantially a request to instruct the jury on the undisputed evidence in the case to find for the defendants. It would have been better practice to have thus simplified the request. At the same time, we are of opinion, and for the reasons hereinbefore given, that the charge as requested should have been given, for the facts stated therein all appear by the undisputed evidence, and the conclusion legally follows.

At the request of the defendant in error, the court charged the jury as follows:

"You are further charged that, if the property in question belonged to Davis Carriage Company, it matters not in whose hands said property was at the time of the seizure. It is a principle of law that, where one has the right to property, this draws the right of possession. . And you are charged that if the goods were held without right by Bering, and that the marshal wrongfully levied upon them, and thereby converts them, then you are charged that Davis Carriage Company could maintain an action for damages against said marshal for conversion; and if you find that plaintiff had the right to this property, although it was in the hands of Bering, and if you find that the marshal levied upon said property as the property of J. B. Simpson, then you will find for plaintiff the value of said property, with six per cent. interest from the date of said levy."

This charge was duly excepted to, and constitutes the third assignment of error. It was clearly erroneous and misleading, because, while the abstract principles of law therein declared may be correct, yet, without qualification, they were wholly inapplicable to the vital issues in the case.

The fourth assignment of error is that the court erred in using the following language in the charge to the jury:

"That the measure of damages was the value of the goods at Dallas at the time of the seizure in the condition in which they were, and as a lot of goods in bulk, and not at retail price, with six per cent. interest on said value from the time of the seizure."

This assignment is not pressed in this court, and, even if it were, we see no objection to the rule of damages therein declared.

The remaining assignments of error need not be considered. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a new trial.