TIDEWATER COAL EXCHANGE, Inc., v. NEW AMSTERDAM CASUALTY CO.

District Court, D. Delaware. July 2, 1927.

No. 4.

1. **Insurance ⟐2—Bond guaranteeing credits extended to members of incorporated coal exchange held essentially insurance against risk.**

Bond guaranteeing credits extended to members of incorporated coal exchange, organized to foster the business of coal producers, railroads, and others by facilitating transshipment of coal at tidewater, *held* essentially an insurance against risk.

2. **Insurance ⟐115(1)—Special property in goods insured is sufficient to enable one to maintain suit on insurance policy for full value of property.**

The full, absolute, and unqualified title to property is not essential to enable one to maintain a suit on an insurance policy for the full value of the property, but a special property therein is sufficient.

3. **Insurance ⟐115(3)—Bailees have insurable interest.**

Wharfingers, warehousemen, commission merchants, and bailees having goods in their possession may insure them in their own names, and in case of loss may recover the full amount of insurance for the satisfaction of their own claims first, and hold residue for the owners.

4. **Insurance ⟐115(2)—Special property of incorporated coal exchange in overdrafts of coal by members held to authorize it to sue on member's bond guaranteeing it against loss on credits extended members.**

Where incorporated coal exchange, organized to facilitate transshipment of coal at tidewater, did not own the coal, but merely managed the coal pools, of its members, *held*, that its special property in coal which it permitted

its members to overdraw entitled it to maintain action on member's bond, guaranteeing credits extended to members on member's default, in making good the overdrafts; intent of bond as disclosed by the instrument, read in light of surrounding circumstances, being that protection should apply, regardless of title to coal.

5. **Insurance ⟺168—Hotchpotch rules of incorporated coal exchange held not by implication part of condition of bond guaranteeing credits to members, so as to preclude action thereon, except for net debits.**

Where bond guaranteeing credits extended to its members by incorporated coal exchange contained no provision, express or implied, that coal debits and coal credits should be considered as a mutual account, or that any suit on the bond should be predicated on the theory that only the excess of the value of debits over credits was recoverable, *held,* that hotchpotch rules of exchange could not be read into bond by implication, so as to preclude action thereon, except for net debits due exchange.

6. **Principal and surety ⟺144—Surety, sued alone, cannot in absence of statute or insolvency of principal avail itself of claims of principal against creditor.**

Surety, when sued alone, cannot, in absence of statutory provision or insolvency of principal, avail itself of any claims of principal against the creditor, even where receivers have been appointed for principal, in absence of showing of ground for such appointment.

7. **Principal and surety ⟺125—Creditor may forbear prosecution of claim against principal debtor without impairing right against surety.**

A creditor is under no obligation to be actively diligent in pursuit of principal debtor, but he may forbear the prosecution of his claim and remain inactive without impairing his right to resort to the surety.

8. **Principal and surety ⟺125—Failure of coal exchange to enforce its rights against members or members' property held not to release surety on member's bond.**

Claim of surety on bond of member of incorporated coal exchange, guaranteeing credits extended by exchange to members, that it was discharged because of failure of exchange to oppose or appeal from order of the court directing receivers for principal, to take and sell principal's coal and coal credits in possession of exchange, *held* to constitute mere claim that exchange failed to exercise a right against principal's property, and such a failure did not release surety in whole or in part, notwithstanding it requested exchange to enforce all its rights and liens against principal's property.

9. **Principal and surety ⟺125—Surety is not discharged by creditor's failure to prove and present claim in bankruptcy or insolvency proceeding against principal.**

A surety is not discharged by creditor's failure to prove and present his claim in bankruptcy or insolvency proceedings, in which the estate of the principal in the bond is being administered.

10. **Subrogation ⟺7(1)—Where creditor fails diligently to prosecute claim against insolvent or bankrupt debtor, surety may pay claim and be subrogated to creditor's rights.**

Remedy of principal debtor's surety, when creditor fails diligently to prosecute his claim against insolvent or bankrupt principal debtor, is to pay debt, as he has undertaken to do, and be subrogated to creditor's rights.

At Law. Action by the Tidewater Coal Exchange, Incorporated, a corporation of the state of Delaware, in dissolution, by Charles A. Owen and others, receivers, against the New Amsterdam Casualty Company. On plaintiff's motion to strike out or dismiss for want of equity defendant's equitable answer. Motion granted.

Andrew C. Gray and James H. Hughes, Jr. (of Marvel, Layton, Morford & Hughes), both of Wilmington, Del., for plaintiff.

Charles F. Curley, of Wilmington, Del., for defendant.

MORRIS, District Judge. In this action at law, brought by Tidewater Coal Exchange, Incorporated, a dissolved Delaware corporation, through its receivers, against New Amsterdam Casualty Company, surety upon three several indemnity bonds wherein Coale & Co. is principal, the breaches of condition alleged are that the principal in the bonds has not indemnified and saved harmless the plaintiff against loss and damage which the plaintiff has suffered by reason of (1) certain credits in coal extended by the plaintiff to the principal; (2) certain credits in money extended to the principal on account of demurrage; and (3) money paid out by the Exchange for the principal's share of the running expenses of the plaintiff. The matter now before the court is a motion of the plaintiff to strike out or dismiss for want of equity an asserted equitable answer, filed by the defendant under section 274(b) of the Judicial Code (Comp. St. § 1251b).

The first defense set up by the answer is that the title to the coal, for which, under the rules and regulations promulgated under authority of the charter by the board of directors for the management and conduct of the affairs of the exchange, credits were properly extended by the exchange to the principal, was not in the exchange, but in certain of its members, and that consequently the declaration fails to show that plaintiff has been damaged by the first of the alleged breaches. The same defense was heretofore made by a common-law plea, a demurrer to which was sustained. It may be that the plea was bad because it was directed, not to the cause of

action alleged, but only to the damages arising from the breach of the conditions, and yet failed at all events to negative nominal damages. The order sustaining the demurrer, however, was based upon the conclusion that the facts alleged in the declaration are adequate to show in the plaintiff a complete cause of action on the bonds for the full value of the coal, regardless of the whereabouts of the legal title to the coal, not its own, obtained by the principal in the bonds from the exchange. The authorities relied upon to support this finding were 1 Chitty on Pleading, 9; Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527, 543, 23 L. Ed. 868; Knight v. Davis Carriage Co., 71 F. 662, 669 (C. C. A. 5).

Upon a reconsideration of the question I arrive at the same conclusion. The declaration discloses that the plaintiff was organized in April, 1920, and duly dissolved in September, 1921. It was not conducted for profit. It had no capital stock. Its purposes, stated at large in Read v. Tidewater Coal Exchange, 13 Del. Ch. 195, 199, 116 A. 898, 900, were, in the main, to foster the business of coal producers, railroads, and others by facilitating and expediting the transshipment of coal at tidewater, to grade, classify, and pool coal, and to take bonds for the benefit of the corporation. The members consist of the incorporators and other persons admitted to membership under the provisions of the by-laws. The method or manner of conducting its business was fixed by rules promulgated, under authority of its charter, by its board of directors. By these rules it was provided that all coal consigned to tidewater points for reshipment by members of the exchange should be consigned to the exchange for the account of such members; that all such coal should be graded and classified in designated pools by the exchange; that the members of the exchange, as a condition of membership, should file with it a bond, with corporate surety satisfactory to the exchange in an amount not less than $10,000, to guarantee the credits extended to the members from time to time; that the debits of any member in any pool should be promptly made good on the demand of the exchange, and that failure on the part of any member in this respect should result in a proceeding upon his bond to cover defaults in this respect; that the account of a member in one designated pool should not have any bearing on his account in another pool at the same or other piers, unless such member should neglect to make up existing shortages; and that in closing accounts, where there exist differences between the tonnage of coal shipped by a member and the tonnage of coal shipped into vessels for his account, and the differences could not be adjusted either by additional shipments or exchange of coal, the executive committee of the exchange should name a price to the commissioner of the exchange for the tonnage involved, and said commissioner of the exchange should authorize such debits or credits as might be necessary to properly adjust the difference.

Under these and other rules, set out in the pleadings herein and stated more at large in Read v. Tidewater Coal Exchange, supra, the Chancellor of the state of Delaware, in Id., 13 Del. Ch. 253, 118 A. 304, held that the title to the coal was in the members of the several pools, and that the exchange acquired and possessed no property other than office equipment, and that it was "a sort of trade agency." He found support for his conclusion in the findings of Judge Learned Hand in New River Collieries Co. v. Snider (D. C.) 284 F. 287, Coyle v. Morrisdale Coal Co. (D. C.) 284 F. 294, and Coyle v. Archibald McNeil & Sons Co. (D. C.) 284 F. 298. But in no one of these cases was there before the court the right of the exchange to recover upon a bond given to it by a member, with surety, as a condition precedent to membership, and without which coal in excess of the amount delivered to the exchange could not have been obtained by such member upon credit.

[1] The bonds in suit provide in part:

"Whereas, the said principal herein has agreed and does hereby agree to indemnify and save harmless the Tidewater Coal Exchange, Inc., against any and all loss, damage, costs, and expenses, which it may hereafter suffer, incur, be put to, pay, or lay out by reason of any credit or credits in money or property extended to said principal, or by reason of any money or moneys paid out on account of said principal, and has agreed and does hereby agree to pay and discharge forthwith on the demand of the Tidewater Coal Exchange, Inc., each and every such debt, obligation, or claim which shall be made, assigned, or apportioned against said principal by the Tidewater Coal Exchange, Inc., absolutely, hereby waiving all defenses both of law and equity:

"Now, therefore, the condition of this bond is such that, if the said Coale & Co., Inc., their heirs, executors, administrators, successors, or assigns, shall perform the aforesaid agreement, and shall well and suf-

ficiently save and keep harmless and indemnified the said Tidewater Coal Exchange, Inc., its successors or assigns, from all cost, loss, and damages which it may be put to, suffer, or incur by reason of any credit or credits in money or property extended to it, them, him, or 'by reason of any money or moneys paid out on its, their, his account, then this obligation to be null and void; otherwise, to remain in full force and virtue in law. * * *"

Such a bond is essentially an insurance against risk. Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; American Surety Co. v. Pauly, 170 U. S. 133, 18 S. Ct. 552, 42 L. Ed. 977.

[2, 3] The full, absolute, and unqualified title to property is not essential to enable one to maintain a suit upon an insurance policy for the full value of the property. A special property is sufficient. Wharfingers, warehousemen, and commission merchants having goods in their possession may insure them in their own names, and in case of loss may recover the full amount of insurance for the satisfaction of their own claims first, and hold the residue for the owners. Home Insurance Co. v. Baltimore Warehouse Co., 93 U. S. 527, 543, 23 L. Ed. 868. A bailee, too, may recover damages for the entire loss or injury to the property possessed by it. Knight v. Davis Carriage Co., 71 F. 662, 669 (C. C. A. 5); Bowen v. New York Cent., etc., R. Co., 202 Mass. 263, 88 N. E. 781.

[4] The special property of the exchange in the coal which it permitted the principal in the bonds to overdraw was not less, I think, than that of a bailee, wharfinger, warehouseman, or commission merchant. Moreover, the intent of the parties to the bonds, as disclosed by the instrument read in the light of the surrounding circumstances and the purposes for which it was made, as may be done (U. S. v. Rundle [C. C. A.] 107 F. 229, 52 L. R. A. 505; Citizens' Trust & Surety Co. v. Zane [C. C.] 113 F. 596, affirmed [C. C. A.] 117 F. 814), was that the protection to be afforded by the bonds in the matter of coal credits should apply to overdrafts of coal made by the members of the exchange, regardless of the whereabouts of the general title to the coal. I think this defense is as inadequate in equity as at law.

[5] Another defense relied upon in the answer is that, if at any time the exchange may maintain an action on the bonds for the full value of any coal overdrawn, it may not, un-der the rules of the exchange, which are apparently of the same substantial import as those set out in New River Collieries Co. v. Snider (D. C.) 284 F. 287, do so unless and until the coal credits of the principal are commuted into money, and then only for the net debits. To support this contention the plaintiff relies upon the Snider Case, Coyle v. Morrisdale Coal Co., and Read v. Tidewater Coal Exchange. This defense was likewise heretofore made by common-law plea, to which a demurrer was filed. The demurrer was sustained upon the ground that the hotchpotch rules of the exchange cannot be read into the condition of the bonds by implication. Richmond, etc., R. Co. v. Kasey, 30 Grat. (71 Va.) 218.

In the cases relied upon by the defendant the duties and obligations of the members of the association were ascertainable solely from the general rules of the exchange, while in the suit at bar the obligations of Coale & Co. and of the defendant, its surety, are fixed by the terms and conditions of the bonds sued upon. I find in the bonds no condition, express or implied, providing that the coal debits and coal credits shall be considered as a mutual account, or that any suit upon the bond shall be predicated upon the theory that only the excess of the value of the coal debits over the value of the coal credits is recoverable. I think this defense no more available to the defendant in equity than at law.

[6] The answer also alleges that there are coal credits to which Coale & Co. are entitled, and sets up these credits as a set-off to the claim of the plaintiff, but the rule is well established that the surety, when sued alone, cannot, in the absence of statutory provision, avail itself of any claims of the principal against the creditor. Graham v. Middleby, 213 Mass. 437, 100 N. E. 750, 43 L. R. A. (N. S.) 977, Ann. Cas. 1914A, 384; Elliott v. Brady, 192 N. Y. 221, 85 N. E. 69, 18 L. R. A. (N. S.) 600, 127 Am. St. Rep. 898; Stockton Sav. & Loan Soc. v. Giddings, 96 Cal. 84, 30 P. 1016, 21 L. R. A. 406, 31 Am. St. Rep. 181. Exceptions to the rule are, however, sometimes made for the enforcement of certain equities existing in favor of a surety, and which would otherwise be irremediable. Thus, where the principal is insolvent and has a valid claim against the plaintiff, the surety can maintain a bill in equity to set off the claim against the plaintiff's claim. 24 R. C. L. 863. The answer, however, fails to set up the insolvency of the principal, or any other special ground entitling it to set off the coal credits in equity. It

is true that the pleadings show that receivers have been appointed for Coale & Co., but nowhere is the ground for such appointment shown.

[7, 8] Again, the answer alleges that the plaintiff permitted the receivers of the principal in the bonds, acting under an order of the court appointing them, to take and sell certain coal and coal credits in the possession of the plaintiff belonging to the principal in the bonds, without any effort on the part of the plaintiff to have such order set aside, and without filing any proof of claim in the receivership proceedings, notwithstanding a letter of the defendant herein to the exchange reading thus:

"We acknowledge receipt of yours of March 29th advising of demurrage accounts due by Coale & Co., Inc., Port Richmond $1,583.85, and Greenwich $176.09. As surety under the above bonds, we hereby demand that you preserve and enforce all your rights against any and all coal, merchandise, credits, property, balances, and any and all rights whatsoever now or hereafter in your possession of said Coale & Co., Inc., and as and against any and all property against which said demurrage, now accrued or hereafter to accrue, may be a lien. In other words, we request that you retain in full all your rights and lien until all demurrage accounts and balances whatsoever are paid by said Coale & Co., Inc."

But each of these defenses must be resolved against the surety. A creditor is under no obligation to be actively diligent in pursuit of his principal debtor. He may forbear the prosecution of his claim, and remain inactive without impairing his right to resort to the surety. The claim of the surety that it is discharged because of the failure of the plaintiff to oppose or appeal from the order of the court directing its receivers for the principal in the bonds to take and sell the principal's coal and coal credits in the possession of the plaintiff is but a statement that the plaintiff failed to exercise a right against the property of the principal, but such failure does not release the surety in whole or in part. Hall v. Hoxsey, 84 Ill. 616; Ewing v. Williams (Ky.) 39 S. W. 843.

[9] Nor is a surety discharged by a failure of a creditor to prove and present his claim in bankruptcy, or in insolvent proceedings, in which the estate of the principal in the bond is being administered. Clopton v. Spratt, 52 Miss. 251; Levy v. Wagner, 29 Tex. Civ. App. 98, 69 S. W. 112; Schott v. Youree, 142 Ill. 233, 31 N. E. 591; St. Louis County v. Security Bank, 75 Minn. 174, 77 N. W. 815. Each of these principles prevails, notwithstanding the surety may request the creditor to enforce his lien or prove his claim. Miller v. White, 25 S. C. 235; Hickam v. Hollingsworth, 17 Mo. 475.

[10] A surety is not without remedy to protect himself under such circumstances. He may pay off the debt, as he has undertaken to do, and be subrogated to the creditor's rights. Nelson v. First Nat. Bank (C. C. A.) 69 F. 798; Morrison v. Citizens' Nat. Bank, 65 N. H. 253, 20 A. 300, 9 L. R. A. 282, 23 Am. St. Rep. 39; Yerxa v. Ruthruff, 19 N. D. 13, 120 N. W. 758, 25 L. R. A. (N. S.) 139 note, Ann. Cas. 1912D, 809.

Finding the answer to be wholly wanting in equity, the motion to strike and dismiss must be granted.