### TIDEWATER COAL EXCHANGE, Inc., v. NEW AMSTERDAM CASUALTY CO.

District Court, D. Delaware.  March 22, 1929.

See also (D. C.) 28 F.(2d) 511.

James H. Hughes, Jr. (of Ward & Gray), of Wilmington, Del., for plaintiff.

Charles F. Curley, of Wilmington, Del., for defendant.

MORRIS, District Judge.  In this action of debt instituted by the Tidewater Coal Exchange, Incorporated, against New Amsterdam Casualty Company, upon three several indemnity bonds, a motion by the plaintiff to strike defendant's equitable answer or defense was made and granted.  (D. C.) 20 F.(2d) 951.  The plaintiff has now demurred to the absque hoc plea, subsequently filed by the defendant to the breach first assigned in each of the counts of the declaration, namely, that Coale & Co., a member of the Exchange and the principal in the bonds, has not indemnified and saved harmless the Tidewater Coal Exchange, Incorporated, against loss and damage which it has suffered by reason of certain credits in coal extended to Coale & Co. by the Exchange.

Under the practice of the Exchange, all coal received by it from its members was distributed by it, according to grade, among its pools, of which there were many.  Each member complying with the requirements of the Exchange in that regard was at liberty to withdraw from any pool, upon credit, coal in excess of its share therein.  The amount sought to be recovered from the defendant under the breach first assigned in the several counts of the declaration, is the aggregate of the debits for coal withdrawn by Coale & Co. from some of the pools in excess of its share of the coal therein, without regard to the coal or credits for coal that company had in other pools of the Exchange.

The plea demurred to consists of an inducement or statement of affirmative matter intended to deny indirectly or argumentatively the first breach assigned by the plaintiff and of the absque hoc directly denying that breach.  The demurrer questions the sufficiency of the inducement, which must itself be an adequate answer in substance to the cause of action set up in the declaration or to the breach there assigned.  Stephen on Pleading, pp. *183, 188.  By the inducement the defendant makes allegations of fact which, it asserts, establishes that a member of the Exchange, and hence the surety on the member's indemnity bond, are liable, not for the gross debits of the member, but only for the amount, if any, by which the member's debits in the pool or pools in which he is overdrawn exceed his credits in the remaining pool or pools, and that the credits of Coale & Co. exceeded its debits.  The question thus presented is whether in measuring defendant's liability, the pools must be considered collectively, as contended by the defendant, or separately, as asserted by the plaintiff.

The facts alleged in its plea by the defendant to support its collective or hotchpot

theory are that the bonds here sued upon were executed, delivered, and received with knowledge of the rules of the Exchange "and upon the basis of the rights of members in and their liabilities to the * * * Exchange shown by the * *. * rules"; that among the rules governing the relations between the Exchange and its members and governing the relations of the members themselves is one which provides that, "The account of a member in one designated pool shall not have any bearing on his account in another pool at the same or other piers, unless said member neglects to make up existing shortages"; that on June 7, 1921, the Exchange presented to Coale & Co., the principal in the bonds, a statement of its debits and credits in the several pools and then demanded that it make good all its debits in coal tonnage as shown by the statement; that Coale & Co. failed and neglected to make up its existing shortages; that the money value of its coal credits was then greater than the value of its coal debits, and so continued until after June 25, 1921, upon which date the bonds were canceled.

Obviously, the theory of the defense pleaded is not that the principal's credits in certain pools should be set off against his debits in the remaining pools, for set-off requires mutuality, 24 R. C. L. 858, 859, and there is no allegation in declaration or plea asserting directly or indirectly that the persons interested in the pools in which Coale & Co. had credits were the same persons that were interested in the pools in which Coale & Co. was a debtor. In fact, all the inferences are that there was no identity of ownership in the different pools. Hence, if a valid defense is to be found in the plea, it is solely because the facts therein set forth disclose that the rules of the Exchange, in contemplation of which the defendant asserts the bonds were given, were such that the failure and neglect of Coale & Co. to make up promptly after the demand of the Exchange on June 7, 1921, its then existing shortages in some of the pools, had the effect of taking Coale & Co. out of the field of operation of the general provision of rule 27 that "the account of a member in one designated pool shall not have any bearing on his account in another pool at the same or other piers," and of bringing it within the control of other provisions or rules, consolidating all the pools in which it was interested as debtor or creditor. The only rules having a possible consolidating effect are these:

"24. The assignment of coal to members shall be authorized by the Commissioner or his deputy and no assignments shall be made in excess of the tonnage which such member has in the designated pool, except at the discretion of the Commissioner or his deputy. No member shall be entitled to any coal from a designated pool when the accounts indicate that the member has overdrawn from that pool, unless, due to some extraordinary condition, the Commissioner or his deputy may deem an exception desirable."

"26. Debits of any member in any pool shall be promptly made good, on demand of the Commissioner or his deputy. Failure on the part of the member will result in proceeding upon his bond to cover the default.

"27. The account of a member in one designated pool shall not have any bearing on his account in another pool at the same or other piers; unless said member neglects to make up existing shortages; except that failure to take delivery of credits available for dumping in any pool shall be sufficient cause for embargoing shipments for member's account to all pools at all ports, as provided for in Rule 30. Members, however, may be permitted to offset overdrafts in one pool with shipments made to the same pool at another pier, subject to the approval of the Commissioner or his Deputy.

"In the case of a member of the Exchange having a debit in a given pool, he may be permitted to make good the debit by the exchange of the same or higher quality of coal at the pier at which the debit exists or at any other pier, subject to the approval of the Commissioner or his Deputy.

"28. In closing accounts, when there exist differences between the tonnage of coal shipped by a member and the tonnage of coal dumped into vessels for his account, and the differences cannot be adjusted, either by additional shipments or exchange of coal, the Executive Committee shall name a price to the Commissioner for the tonnage involved, and the Commissioner shall authorize such debits or credits as may be necessary to properly adjust the difference."

Rules 9, 10, and 12 promulgated by the old unincorporated Exchange June 20, 1917, and rules 22, 23, and 28 promulgated by it April 24, 1919, having many points of resemblance to the quoted rules of the incorporated Exchange, were considered by Judge Learned Hand in New River Collieries Co. v. Snider (D. C.) 284 F. 287, where the old rules are set out at length, in Coyle v. Morrisdale Coal Co. (D. C.) 284 F. 294, Coyle v. Archibald McNeil & Sons Co. (D. C.) 284 F. 298, and in Coyle v. Johnstown Coal &

Coke Co. (D. C.) 284 F. 301. Judge Hand found that under the rules and facts before him the obligations of the member were to be ascertained by a virtual consolidation of pools. The present rules, however, contain provisions, not found in the old rules, which, taken in connection with the facts pleaded in the case at bar, distinguish this case from those before Judge Hand. Rule 26 contains the new provision that: "Failure on the part of the member [promptly to make good, on demand of the Commissioner or his deputy, debits in any pool] will result in proceeding upon his bond to cover the default." Closing of the account under rule 28 was not made a condition precedent to the suit upon the bond expressly authorized by rule 26. In this case, as in Read v. Tidewater Coal Exchange, Inc., 13 Del. Ch. 253, 118 A. 304, there has been no closing of the member's account or commutation of the coal into money under rule 28. The failure of Coale & Co. promptly to make good, on demand, its debits conferred upon the Exchange the right to proceed on its bond "to cover the default," that is, to recover a sum of money corresponding to, or counterbalancing the amount of the debits. No fact showing that right has been lost is alleged. This suit is an exercise of that right.

Whatever inchoate right of consolidation or hotchpot may have been created under rule 27 by the failure of Coale & Co. to make up its shortages, that right, so far as now appears, has not become consummate and, in any event, is not the right here relied upon by the plaintiff.

The demurrer must be sustained.